SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/13/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOSE LUIS PELAEZ, INC. AND JOSE
PELAEZ,
                           Plaintiffs,
      -against-                                  16-CV-5393 (KMW)

MCGRAW-HILL GLOBAL EDUCATION          **OPINION & ORDER**
HOLDINGS LLC AND MCGRAW-HILL
SCHOOL EDUCATION HOLDINGS LLC,
                           Defendants.
-----------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

In this action, Plaintiffs Jose Pelaez and Jose Luis Pelaez, Inc. (collectively, "Pelaez") bring claims for copyright infringement against Defendants McGraw-Hill Global Education Holdings LLC and McGraw-Hill School Education Holdings LLC (collectively, "McGraw-Hill"). McGraw-Hill now moves to disqualify the law firm Harmon Seidman Bruss & Kerr, LLC ("HSBK") from representing Pelaez in this suit. McGraw-Hill's motion is based on a decision by Judge Michael Baylson of the Eastern District of Pennsylvania disqualifying HSBK from representing the plaintiff in *Grant Heilman Photography, Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. CV-17-694 (MMB) (E.D. Pa.) ("*Heilman II*"). For the reasons below, the motion is DENIED.

## BACKGROUND

### I. Judge Baylson's Findings

Because McGraw-Hill's motion relies principally on Judge Baylson's decision to disqualify HSBK from representing the plaintiff in *Heilman II*, the background to his ruling is summarized below. *See Heilman II*, 2018 WL 2065060 (E.D. Pa. May 2, 2018) (Baylson, J.).

## A. HSBK's Disqualification in *Heilman II*

Grant Heilman Photography, Inc. ("Heilman") serves as an agent for photographers in connection with the licensing of their photographs for use in various publications. *Id.* at *1. McGraw-Hill is an educational publisher. *Id.*

Heilman has sued McGraw-Hill twice in copyright infringement actions before Judge Baylson. It was represented by HSBK in both suits, until HSBK's disqualification in 2018. The first suit, *Grant Heilman Photography, Inc. v. McGraw-Hill Global Educ. Holdings, LLC, et al.*, No. 12-CV-2061 (MMB) (E.D. Pa.) ("*Heilman I*"), began in 2012. The suit settled, but the settlement did not release McGraw-Hill from future claims based on the unauthorized printing or distribution of Heilman's photographs. *Id.* The second suit, *Heilman II*, began in 2017. In *Heilman II*, Heilman alleged that additional unauthorized use of its photographs occurred after the settlement of *Heilman I*. *Id.*

On August 31, 2017, while *Heilman II* was pending, McGraw-Hill became aware that HSBK had retained Mari Masalin-Cooper, a former McGraw-Hill employee, to consult on litigation against McGraw-Hill. *Id.* at *2.

On September 26, 2017, McGraw-Hill moved to disqualify HSBK from representing Heilman in *Heilman II*. *Id.* McGraw-Hill alleged that, although Masalin-Cooper is not a lawyer, she was a "pivotal litigation support employee" at McGraw-Hill and as a result was privy to McGraw-Hill's privileged and confidential information. *Id.* at *5. According to McGraw-Hill, because HSBK retained Masalin-Cooper as a consultant, a presumption arose that she had shared McGraw-Hill's confidences with the firm, and therefore HSBK had to be disqualified. *Id.*

On February 20, 2018, Judge Baylson held an evidentiary hearing (the "Hearing"). *Id.* at at *2. At the Hearing, Judge Baylson heard testimony from attorneys Michael Beylkin and Elizabeth Seidlin-Bernstein, who represented McGraw-Hill in *Heilman I*; HSBK attorneys

2

Amanda Bruss and Maurice Harmon; and the president and owner of Heilman, Sonia Wasco. (*See* Mem. Law Supp. Mot. Disqualify ("McGraw-Hill Mem."), Ex. B, ECF No. 163.)

### B. Masalin-Cooper's Relationship with HSBK

The basic contours of Masalin-Cooper's relationship with HSBK are not disputed. From September 24, 2012, until her termination on May 10, 2016, Masalin-Cooper worked at McGraw-Hill, first as the Director of Creative Services and Content Licensing and later as the Director of Standards and Compliancy. *See Heilman II*, 2018 WL 2065060, at *2.

On August 18, 2016, after she was terminated by McGraw-Hill, Masalin-Cooper sent an unsolicited email to HSBK partner Christopher Seidin. *Id.* at *3. In the email, Masalin-Cooper stated that she had recently left her job with McGraw-Hill. She claimed to have a "deep and broad understanding of the business of permission/rights acquisition and the business contract and compliance of 3rd party content and media," and asked whether HSBK would be interested in "consulting on the best practices for content licensing and contract compliance as it pertains to copyright." *Id.* Twelve days later, Masalin-Cooper sent a substantively identical, also unsolicited, email to HSBK partner Maurice Harmon. *Id.* at *4.

The following month, Harmon and Masalin-Cooper communicated by telephone and email regarding her work experience. *Id.*

On December 6, 2016, HSBK and Masalin-Cooper entered into an agreement for Masalin-Cooper to provide consulting and/or expert witness services concerning "[l]itigation involving McGraw-Hill Global Education Holdings LLC and McGraw-Hill School Education Holdings LLC." *Id.*

The extent of Masalin-Cooper's "consulting" for HSBK was a one-hour telephone conversation with HSBK attorney Amanda Bruss on December 8, 2016, in which Bruss and Masalin-Cooper discussed McGraw-Hill's databases, permissions systems, and licensing

3

procedures. *Id.* Masalin-Cooper was paid $600 for her services. *Id.* The only subsequent interactions between HSBK and Masalin-Cooper involved scheduling (and taking) her deposition, and an October 22, 2017 email from Bruss to Masalin-Cooper formally terminating Masalin-Cooper's consulting arrangement with HSBK. *Id.* at *5.

**C. Judge Baylson's Decision**

On May 2, 2018, Judge Baylson determined that HSBK attorneys had violated the Pennsylvania Rules of Professional Conduct by hiring Masalin-Cooper and disqualified HSBK from continuing to represent Heilman in *Heilman II*. *Id.* at *9–13. In his decision disqualifying HSBK, Judge Baylson made factual findings based on his review of, among other things, Masalin-Cooper's deposition, declarations submitted by the parties, and testimony received at the Hearing. *Id.* at *2.

Judge Baylson found that while employed by McGraw-Hill, Masalin-Cooper was "deeply involved in discovery management and other litigation support, including with respect to [*Heilman I*]." *Id.* Specifically, Judge Baylson found that the team Masalin-Cooper managed at McGraw-Hill was tasked with suppressing the unauthorized images that were at issue in *Heilman I*. *Id.* Indeed, she had filed a declaration in that action, stating that she was "presently overseeing efforts to ensure that none of the photos that were at issue [in *Heilman I*] is [sic] used in any future printing of Higher Education textbooks." *Id.* at *3.

The issues presented in *Heilman II* appeared to Judge Baylson to "arise directly out of" McGraw-Hill's failure to successfully suppress the content at issue in *Heilman I*. *Id.* He found that Masalin-Cooper "possessed privileged information (about material facts on substantially related cases) vis-à-vis both sides of the litigation . . . much in the way of a 'double agent,'" *id.* at *13, and that Masalin-Cooper had, in fact, revealed confidential and/or privileged information concerning *Heilman I* to HSBK, *id.* at *12. Judge Baylson held that by retaining Masalin-

4

Cooper, HSBK had incurred a duty to take preventive measures to stop Masalin-Cooper from sharing McGraw-Hill's confidences with HSBK. *Id.* at *10. By failing to do so, HSBK violated the Pennsylvania Rules of Professional Conduct. *Id.* at *13. According to Judge Baylson, "[t]he appearance of impropriety, and [HSBK's] lack of controls in ensuring compliance with the Rules" required its disqualification. *Id.*

On July 12, 2018, Heilman petitioned the U.S. Court of Appeals for the Third Circuit for mandamus, seeking to vacate Judge Baylson's disqualification order. The Third Circuit denied the petition on July 25, 2018. *See in re: Grant Heilman Photography, Inc.*, No. 18-2526 (3d Cir. July 17, 2018).

## II. Procedural History

On May 24, 2018, McGraw-Hill moved to disqualify HSBK from representing Pelaez in this action. (*See* ECF No. 162.)[1] Attached to its memorandum of law was a copy of Judge Baylson's ruling in *Heilman II*, a transcript of the Hearing, and the deposition designations submitted as evidence by Heilman and McGraw-Hill at the Hearing. (*See* McGraw-Hill Mem., Exs. A–C.)

On June 7, 2018, Pelaez filed a memorandum in opposition to disqualification. (Pls.' Mem. Opp'n Mot. Disqualify ("Pelaez Opp'n"), ECF No. 164.)

On June 14, 2018, McGraw-Hill filed a reply. (*See* Reply Supp. Mot. Disqualify ("Reply"), ECF No. 170.)

---

[1] In addition to seeking HSBK's disqualification in this action, McGraw-Hill filed substantially similar motions in four other cases. At least two of those motions have been denied. *See Kashi v. McGraw-Hill Glob. Educ. Holdings*, No. CV-17-1818, 2018 WL 4094958 (E.D. Pa. Aug. 27, 2018); *Harrington v. McGraw-Hill Global Educ. Holdings, LLC*, 17-CV-2960 (RM), 2018 U.S. Dist. LEXIS 146628 (D. Colo. July 25, 2018). The Court is not aware of the status of the other motions.

5

## LEGAL STANDARD

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)). Accordingly, "decisions on disqualification motions often benefit from guidance offered by . . . state disciplinary rules, [but] such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video*, 409 F.3d at 132 (internal citations omitted). In deciding whether to disqualify an attorney, the Court must balance "'a client's right freely to choose his counsel' against 'the need to maintain the highest standards of the profession.'" *Id.* (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)).

In this Circuit, "disqualification is called for only where 'an attorney's conduct tends to taint the underlying trial,' because federal and state disciplinary mechanisms suffice for other ethical violations." *Prevezon Holdings*, 839 F.3d at 241 (quoting *Bd. of Ed. of City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). "[W]hen there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases." *Nyquist*, 590 F.2d at 1247; *see also Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 388 (S.D.N.Y. 2010) (Francis, M.J.) ("[M]ere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion." (quoting *United States Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (Leisure, J.)).

Whether to disqualify an attorney "in a particular case" can be determined "only after painstaking analysis of the facts and precise application of precedent." *Olajide v. Palisades*

*Collection, LLC*, No. 15-CV-7673 (JMF), 2016 WL 1448859, at *4 (S.D.N.Y. Apr. 12, 2016) (Furman, J.) (quoting *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir. 1977)). Thus, "the mere fact that [HSBK] was disqualified in [another] case[] does not call for the same result here." *Id.* "Although any doubts are to be resolved in favor of disqualification, [McGraw-Hill] bears a *heavy burden* of demonstrating that disqualification is necessary." *Arista Records LLC v. Lime Grp. LLC*, No. 06-CV-5936 (KMW), 2011 WL 672254, at *4 (S.D.N.Y. Feb. 22, 2011) (Wood, J.) (quoting *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231–32 (S.D.N.Y. 2010) (Scheindlin, J.)) (emphasis in *Arista Records*).

## DISCUSSION

The parties disagree on what disciplinary rule governs HSBK's relationship with Masalin-Cooper. McGraw-Hill argues that because HSBK contracted with Masalin-Cooper, she should be treated like a "side-switching consultant," relying on the line of Second Circuit decisions dealing with successive representation and on *MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F. Supp. 712, 715 (D. Conn. 1991). (*See* McGraw-Hill Mem. 6–8 (citing *Nyquist*, 590 F.2d at 1246; *Prevezon Holdings*, 839 F.3d at 241; and *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).)

In Pelaez's view, the fact that HSBK paid Masalin-Cooper is irrelevant to the analysis of whether it breached an ethical duty. (*See* Pelaez Opp'n 10.) Pelaez contends that HSBK's contact with Masalin-Cooper should viewed in light of the general rule in this Circuit that "so long as measures are taken to steer clear of privileged or confidential information, adversary counsel may conduct ex parte interviews of an opposing party's former employee." *Muriel Siebert & Co. v. Intuit Inc.*, 8 N.Y.3d 506, 511 (2007); *see also, e.g., Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 416 (S.D.N.Y. 2011) (Wood, J.) ("A lawyer may have ex parte contact with the opposing party's former employees.").

7

The Court need not resolve the above disagreement in order to rule on McGraw-Hill's motion. Regardless of how HSBK's conduct is framed, its disqualification is warranted only if McGraw-Hill has shown that HSBK likely obtained privileged or confidential information pertinent to this case, such that there is a risk the trial in this matter will be tainted. *See Prevezon Holdings*, 839 F.3d at 241.

As an initial matter, McGraw-Hill has not shown that Masalin-Cooper possessed privileged or confidential information specific to this case. Masalin-Cooper did not begin work at McGraw-Hill until late 2012, after the transactions at issue in this litigation were completed, and she was fired approximately two months before the complaint in this case was filed.

Although it is undisputed that Masalin-Cooper provided Bruss with some information relevant to this case, McGraw-Hill has not shown that information to be confidential, let alone privileged. The parties agree that during Bruss's conversation with Masalin-Cooper, Bruss sought and received information concerning whether McGraw-Hill had internal systems and databases designed to track the use of photographs in its publications. (*See* Pelaez Opp'n 19; Reply 4.) McGraw-Hill characterizes this information as "confidential," and argues that HSBK has "exploited" the information to its advantage in this suit. (*See* McGraw-Hill Mem. 3–5; Reply 3–4.) Yet McGraw-Hill fails to counter Bruss's sworn statements that (1) this information was subsequently obtained directly from McGraw-Hill and its employees through formal discovery, in depositions that McGraw-Hill did not designate as confidential; and (2) HSBK was aware of the general nature of the database issue prior to Bruss's interview of Masalin-Cooper. (*See* Decl. Amanda Bruss ¶¶ 11–13, 26, ECF No. 165.) These statements, which are left unaddressed by McGraw-Hill, refute McGraw-Hill's contention that the information Bruss received concerning photograph usage tracking was confidential. Moreover, McGraw-Hill does not identify any unfair advantage Pelaez will obtain in this litigation as a result of any of this information having

8

initially been acquired from Masalin-Cooper. *See Matthews v. LeBoeuf, Lamb, Greene & MacRae*, 902 F. Supp. 26, 31 (S.D.N.Y. 1995) (Sotomayor, J.) (holding that a lawyer's knowledge of allegedly confidential information did not give him an unfair advantage where the information could be obtained through discovery). Therefore, even if McGraw-Hill had shown that the information received was confidential (and it has not), the Court would not disqualify HSBK on this basis. *See United States Football League*, 605 F. Supp. at 1464 ("Only information that would give the attorney an unfair advantage that will taint the trial should be a sufficient basis to disqualify that attorney.").

Absent evidence that Masalin-Cooper possessed privileged or confidential information concerning the transactions at issue in this litigation, McGraw-Hill must show that there is a "substantial relationship" between this litigation and the matter on which Masalin-Cooper worked, namely, *Heilman I*. *See, e.g., Olajide*, 2016 WL 1448859, at *4. To warrant disqualification, the relationship between the two matters must be "patently clear," that is, the issues involved must be "'identical' or 'essentially the same.'" *Revise Clothing*, 687 F. Supp. 2d at 392 (quoting *Gov't of India*, 569 F.2d at 739)).

McGraw-Hill falls short of the necessary showing. Aside from referring to *Heilman II* as a "parallel case," (McGraw-Hill Mem. 1), McGraw-Hill provides no argument on this point. Moreover, in a submission made in opposition to Pelaez's pending motion for partial summary judgment, McGraw-Hill itself argues that the resolution of *Heilman I* is "not relevant" to this proceeding. (Defs.' Resp. Pls.' Am. Statement Undisputed Material Facts (ECF No. 132), ¶¶ 43, 44). As McGraw-Hill points out, this case arises out of conduct that occurred in connection with agreements between McGraw-Hill and a third-party, Corbis, that was not involved in *Heilman I*. (*See id.*)

To the extent McGraw-Hill asserts that Masalin-Cooper had knowledge of McGraw-

9

Hill's general litigation strategies and defenses, (*see* McGraw-Hill Mem. 3, 9), that type of knowledge is not sufficient to establish a risk of taint in this matter. *See Olajide*, 2016 WL 1448859, at *4 (holding that disqualification was not warranted where "movant [a]t most establish[ed] that [the lawyer whose disqualification was sought] 'recurrently handled' . . . 'factually distinct' matters of the same 'type' as this suit, and may have had 'general knowledge' of [movant's] 'policies and practices'" (quoting N.Y. Rule Prof'l Conduct 1.9, cmts. 2-3)); *Vestron, Inc. v. Nat'l Geographic Soc.*, 750 F. Supp. 586, 595 (S.D.N.Y. 1990) (Francis, M.J.) ("If insight into . . . general 'litigation thinking' were to constitute 'relevant privileged information[],' then disqualification would be mandated in virtually every instance of successive representation. That clearly is not the law."); *accord Matthews v. LeBoeuf*, 902 F. Supp. at 31. In any event, there is no evidence that that Masalin-Cooper had privileged or confidential information concerning any matter other than *Heilman I*. Although McGraw-Hill points out that Bruss's conversation with Masalin-Cooper concerned issues applicable to all of the cases HSBK was litigating against McGraw-Hill—including this one—this merely establishes Bruss's motivation for interviewing Masalin-Cooper. It is not probative of the extent of Masalin-Cooper's knowledge.

McGraw-Hill complains that HSBK failed to give notice of its intent to consult with Maslin-Cooper, depriving it of the "opportunity . . . to control the dissemination of [its] privileged and confidential information." (Reply 7.) McGraw-Hill need not have depended on HSBK for that opportunity. It is well-established in this Circuit that a party who fears its former employee will reveal privileged or confidential information in the course of an ex parte interview by opposing counsel may apply to the Court for a protective order which includes prophylactic measures designed to avoid such disclosure. *See, e.g., Arista Records*, 784 F. Supp. 2d at 416; *In re SLM Corp. Sec. Litig.*, No. 08-CV-1029 (WHP), 2011 WL 611854, at *2 (S.D.N.Y. Feb. 15,

2011) (Pauley, J.); *Judd v. Take-Two Interactive Software, Inc.*, No. 07-CV-7932 (GEL), 2008 WL 906076, at *1–2 (S.D.N.Y. Apr. 3, 2008) (Lynch, J.). Given McGraw-Hill's characterization of Masalin-Cooper as "an instrumental in-house participant in McGraw-Hill's defense of the cases litigated against it by HSBK," (Reply 8), the Court would have expected McGraw-Hill to apply—in this case or in the other cases in which it ultimately filed disqualification motions—for a protective order regulating HSBK's contact with Masalin-Cooper. Yet McGraw-Hill never applied for such an order in this case; nor does McGraw-Hill indicate that it applied for such an order in any of the other cases in which it filed motions to disqualify HSBK. In light of McGraw-Hill's seeming lack of concern regarding Masalin-Cooper earlier in this litigation, the present motion carries the whiff of tactical maneuvering. This reinforces the Court's conclusion that McGraw-Hill has failed to demonstrate that HSBK's contact with Masalin-Cooper created a risk that the underlying trial in this matter will be tainted. *See Nyquist*, 590 F.2d at 1246 (noting that the Second Circuit's "considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct . . . probably derives" in part "from the fact. . . that disqualification motions are often interposed for tactical reasons" (internal citations omitted)).

For the reasons above, disqualification of HSBK is not warranted. Because McGraw-Hill has not requested any relief aside from disqualification, the Court need not reach the question of whether, even in the absence of a risk of taint, HSBK's contact with Masalin-Cooper violated any state disciplinary rules.

## CONCLUSION

McGraw-Hill's motion to disqualify Pelaez's counsel, HSBK, is DENIED. The Clerk of Court is directed to close Docket No. 162.

SO ORDERED.

Dated: New York, New York
March 13, 2019

_____
KIMBA M. WOOD
United States District Judge