UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSE LUIS PELAEZ, INC. AND JOSE
PELAEZ,

SDNY DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/2/19

Plaintiffs,

-against-

MCGRAW-HILL GLOBAL EDUCATION
HOLDINGS LLC AND MCGRAW-HILL
SCHOOL EDUCATION HOLDINGS LLC,

Defendants.

----------------------------------------------------------X

16-cv-5393 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

Plaintiffs Jose Luis Pelaez, Inc. and Jose Pelaez (collectively, "Pelaez") bring this action

for copyright infringement against Defendants McGraw-Hill Global Education Holdings LLC

and McGraw-Hill School Education Holdings LLC (collectively, "McGraw-Hill"). McGraw-

Hill moves for summary judgment on all of Pelaez's claims. Pelaez moves for summary

judgment on 129 of his 573 infringement claims and requests a ruling that the infringement he

alleges was willful. For the reasons below, both parties' motions are GRANTED in part and

DENIED in part.

**BACKGROUND**

**I.     Factual Background**

The following facts are not genuinely disputed unless otherwise noted.

Jose Pelaez is a commercial photographer and president and sole owner of Jose Luis

Pelaez Inc., a corporation organized under New York law. (Pls.' Resp. to Defs.' Statement of

Undisputed Material Facts ("Pelaez 56.1 Response"), ECF No. 155, ¶ 3.) McGraw-Hill is a

publisher of textbooks and educational products. (*Id.* ¶ 1.)

Beginning in 1990, Pelaez entered into representation agreements with non-parties Corbis

and its predecessor-in-interest The Stock Market (collectively, "Corbis"), authorizing Corbis to sub-license Pelaez's photographs on his behalf. (Defs.' Resp. to Am. Statement of Undisputed Material Facts ("McGraw-Hill's 56.1 Resp.") ¶ 8, ECF No. 132.) The agreements authorized Corbis to issue limited licenses for the use of Pelaez's images by third parties in exchange for reasonable license fees. (*Id.* ¶ 9.)

During the time period relevant to this suit, Corbis and McGraw-Hill entered into a series of preferred pricing agreements (collectively, the "PPAs"), including:

- An agreement entitled "Textbook rates Glencoe valid through 5-1-2001," effective as of June 29, 2000 (the "2000 PPA");
- An agreement entitled "Special Volume-Based Pricing Agreement," effective as of January 1, 2003 (the "2003 PPA");
- An agreement entitled "Special Volume-Based Pricing Agreement," effective as of May 1, 2006 (the "2006 PPA");
- An agreement entitled "Preferred Pricing Agreement" effective as of February 27, 2009 (the "2009 PPA"); and
- An agreement entitled "Preferred Pricing Agreement," effective as of April 1, 2014 (the "2014 PPA").

(Pelaez's Counterresp. to Defs.' Counterstatement of Additional Material Facts ("Pelaez 56.1 Counterresp.") ¶¶ 69, 116, ECF No. 143.) The PPAs set varying fees for different tiers of anticipated use, typically based on ranges of estimated print runs. (*Id.* ¶ 113.)

Initially, Corbis provided Pelaez's photographs to McGraw-Hill in collections of slide transparencies or online image collections from which McGraw-Hill could review and select photographs. (*Id.* ¶¶ 71–72.) Beginning by at least 2004, however, McGraw-Hill had access to high-resolution versions of Pelaez's photographs suitable for printing. (*Id.*)

In the event McGraw-Hill decided to use a photograph from Corbis's collection in one of its textbooks, McGraw-Hill would request an invoice from Corbis. (*Id.*) The request provided Corbis with information regarding the anticipated print run, geographic distribution, language(s),

and format(s) of the textbook that was expected to contain the selected photograph. (*Id.*)

The invoices issued by Corbis generally set forth the "rights" granted to McGraw-Hill (*e.g.*, "[o]ne time non-exclusive, North America, English") the "usage" (*e.g.*, "Books: Text, Trade Reference"), the "distribution quantity" (*e.g.*, 45,000), the license's start date, and the license's expiration date. (*See* Kerr Decl., Ex. 65, ECF No. 123.) Generally, McGraw-Hill requested an invoice from Corbis prior to publication of the textbook expected to contain the photograph. (Pelaez 56.1 Counterresp. ¶ 81.) However, if McGraw-Hill did not request an invoice prior to publication, Corbis would later issue a "back-dated" invoice acknowledging rights beginning prior to the invoice date. (*Id.* ¶ 82.)

Pelaez contends that, from 1992 through 2017, McGraw-Hill repeatedly exceeded the limitations contained on the invoices issued by Corbis, thereby infringing his copyrights. (*Id.* ¶ 10.) The photographs on which Pelaez's claims are based are included in Exhibits 1, 2 and 3 to the Third Amended Complaint ("TAC"). (ECF No. 117.) With respect to the photographs contained in Exhibits 1 and 2 to the TAC, Pelaez alleges that McGraw-Hill exceeded the limitations on the licenses it was granted by (1) printing or distributing more copies of the photographs than authorized; (2) distributing publications containing the photographs outside the authorized distribution area; (3) publishing the photographs in electronic, ancillary, or derivative publications without permission; (4) publishing the photographs in international editions and foreign publications without permission; and (5) publishing the photographs beyond the specified time limits. (*Id.* ¶ 15.) With respect to the photographs in Exhibit 3, Pelaez alleges that McGraw-Hill never obtained a license to use those photographs, and thus that each use of those photographs by McGraw-Hill constituted copyright infringement. (*Id.* ¶ 16.)

The core of the parties' disagreement is what significance should be ascribed to the invoices exchanged between Corbis and McGraw-Hill, the PPAs, and the course of conduct

3

between McGraw-Hill and Corbis. According to Pelaez, McGraw-Hill's authorization to use Pelaez's photographs was limited by the terms included in the invoices. According to McGraw-Hill, the invoices did not control the scope of its license to use a given photograph; rather, they at most provided estimates of McGraw-Hill's anticipated use of a photograph and the applicable billing level for such use.

## II. Procedural Background

Pelaez filed the initial complaint in this suit on July 6, 2016. (ECF No. 1.) He filed an amended complaint on September 22, 2016 and subsequently filed a second amended complaint on February 3, 2017. (ECF Nos. 22, 35.)

On June 23, 2017, both parties moved for partial summary judgment. (ECF Nos. 57, 64.)

On February 26, 2018, Pelaez was granted leave to file a further amended complaint.

(ECF No. 111.)

On March 8, 2018, Pelaez filed the TAC. (ECF No. 117.)

On March 12, 2018, Pelaez moved for partial summary judgment on 129 of his copyright infringement claims alleged in the TAC. (ECF No. 120.)

On March 14, 2018, McGraw-Hill answered the TAC. (ECF No. 129.)

On March 26, 2018, McGraw-Hill filed its memorandum in opposition to Pelaez's motion. (Mem. Law Opp'n Pls.' Mot. Partial Summ. J. ("McGraw-Hill Opp'n"), ECF No. 131.) On April 2, 2018, Pelaez filed his reply. (Pls.' Reply Mem. Supp. Mot. Summ. J. ("Pelaez Reply"), ECF No. 142.)

On April 10, 2018, McGraw-Hill moved for summary judgment on all of Pelaez's claims and filed a memorandum in support of its motion. (Mem. Law. Supp. Defs.' Mot. Summ. J. ("McGraw-Hill Mem."), ECF No. 149.) On April 24, 2018, Pelaez filed his memorandum in opposition to McGraw-Hill's motion. (Mem. Law Opp'n Defs.' Mot. Summ. J. ("Pelaez

4

Opp'n"), ECF No. 154.) On May 1, 2018, McGraw-Hill filed its reply. (Reply in Further Supp. Defs.' Mot. Summ. J. ("McGraw-Hill Reply"), ECF No. 157.)

Pelaez subsequently filed five letters providing supplemental authority in support of his motion for partial summary judgment and in opposition to McGraw-Hill's motion for summary judgment. (ECF Nos. 175–78; ECF Nos. 187–88.) McGraw-Hill filed one letter providing supplemental authority in support of its motion for summary judgment and in opposition to Pelaez's motion for partial summary judgment. (ECF No. 179.)

## LEGAL STANDARDS

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 30 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). "When both sides have moved for summary judgment, 'each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.'" *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57 (2d Cir. 2012) (quoting *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010)).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (quoting *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013)). "But where 'the burden of proof at trial would fall on the nonmoving party,' the moving party can shift the initial burden by 'point[ing] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.'" *Id.* (alteration in *Jaffer*) (quoting *Simsbury-Avon Pres. Soc'y, LLC v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009)). It follows that, where a plaintiff's motion for summary judgment would be meritorious absent the assertion of an affirmative

5

defense, in order to avoid summary judgment, the defendant "must adduce evidence which, viewed in the light most favorable to and drawing all reasonable inferences in favor of [it], would permit judgment for [it] on the basis of that defense." *Frankel v. ICD Holdings S.A.*, 930 F. Supp. 54, 65 (S.D.N.Y. 1996) (Kaplan, J.).

"In ruling on a motion for summary judgment, the district court may rely on 'any material that would be admissible' at a trial." *Lyons*, 681 F.3d at 57 (quoting *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008)). The court "may not properly focus on individual strands of evidence and consider the record in piecemeal fashion; rather, it must consider all of the evidence in the record, reviewing the record taken as a whole." *Id.* (internal citations and quotation marks omitted).

## DISCUSSION

The Copyright Act gives copyright holders several "exclusive rights," including the right "to reproduce the copyrighted work" or to authorize others to do so. 17 U.S.C. § 106. "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright, or right of the author, as the case may be." *Id.* § 501(a). A copyright owner who claims infringement must demonstrate "both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001)).

Ownership of a valid license to use the copyrighted work is generally a defense to copyright infringement. *See id.* at 197 ("A valid license to use the copyrighted work 'immunizes the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor.'" (quoting *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007))). However, a copyright owner may bring a claim for infringement against a licensee of

6

his or her work where: "(1) the licensee's alleged infringement is outside the scope of the license; (2) the licensee failed to satisfy a condition precedent to the license, such that the license is invalid; or (3) the licensor rescinded the license after the licensee materially breached one of its covenants." *PaySys Int'l, Inc. v. Atos Se, Worldline SA, Atos IT Servs. Ltd.,* 226 F. Supp. 3d 206, 215 (S.D.N.Y. 2016) (Forrest, J.) (citing *Graham v. James,* 144 F.3d 229, 235–38 (2d Cir. 1998)).

"The existence of a license is an affirmative defense, placing upon the party claiming a license' the burden of coming forward with evidence' of one." *Spinelli,* 903 F.3d at 197 (quoting *Bourne v. Walt Disney Co.,* 68 F.3d 621, 631 (2d Cir. 1995)). "By contrast, '[w]here only the scope of the license is at issue,' it is the copyright owner's burden to show that the defendant's use of a work was unauthorized." *Id.* (quoting *Bourne,* 68 F.3d at 631).

## III. McGraw-Hill's Motion

McGraw-Hill moves for summary judgment on all of Pelaez's claims. In support of its motion, McGraw-Hill argues principally that the conduct Pelaez complains of constitutes, at most, a breach of the licensing agreements it entered into with Corbis and therefore cannot also constitute copyright infringement. In the alternative, McGraw-Hill argues that (1) with respect to 477 of his 573 claims, Pelaez is not eligible for statutory damages because he has not provided any evidence of when McGraw-Hill's alleged infringement began; (2) with respect to the remaining ninety-six claims, Pelaez has failed to demonstrate valid registrations, a prerequisite to liability for copyright infringement; and (3) under *Petrella v. Metro-Goldwyn-Meyer, Inc.,* 572 U.S. 663 (2014), Pelaez may not obtain retrospective relief based on conduct that occurred more than three years before the filing of his initial complaint in this suit.

### A. License Terms

As a threshold matter, McGraw-Hill contends that to properly claim copyright

7

infringement, Pelaez must show that McGraw-Hill violated a condition precedent to the licenses granted to it by Corbis. Absent such a showing, argues McGraw-Hill, the only potential claim based on its conduct is for breach of contract. (McGraw-Hill Mem. 15.)

McGraw-Hill is incorrect. Its argument improperly conflates an infringement claim based on the violation of a license condition with an infringement claim based on use that exceeds the scope of a license. Pelaez alleges the latter, not the former.

The agreements entered into by McGraw-Hill and Corbis restricted the scope of the licenses granted to McGraw-Hill by limiting, among other things, the number of copies McGraw-Hill was authorized to make and the time period in which it could make those copies. To the extent McGraw-Hill exceeded these limitations and thereby violated a right granted to Pelaez under the copyright laws, Pelaez properly claims infringement. *See Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.2d 228, 230 (2d Cir. 1982) (holding that, where a license to use a copyrighted work was limited in duration, unauthorized copying after the licensing agreement expired constituted infringement); *Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 576–80 (S.D.N.Y. 2016) (Rakoff, J.) (holding that, where a licensing agreement authorized the use of a copyrighted work only for a specified time period, use that occurred prior to or after that time period was infringing); *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 287–88 (S.D.N.Y. 2014) (Failla, J.) (holding that, where agreement authorized licensee to print up to 30,000 copies, licensee exceeded the "scope" of the license by printing 40,000 copies); *Harris v. Simon & Schuster, Inc.*, 646 F. Supp. 2d 622, 631 (S.D.N.Y. 2009) (Sweet, J.) ("[I]nsofar as [plaintiff] alleges that [defendant] exceeded the scope of its [l]icenses by publishing the [w]ork in states other than those identified [in the licenses], he states a valid claim for copyright infringement."); *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 191 (S.D.N.Y. 2009) (Lynch, J.), *modified on other grounds on reconsideration*, 642 F.

8

Supp. 2d 206 (S.D.N.Y. 2009) (holding that, where contract granted right to use copyright work for licensee's "existing customer base," using the copyrighted work for new customers constituted copyright infringement).

*Graham v. James*, 144 F.3d 229, the sole controlling authority relied on by McGraw-Hill in support of its argument concerning conditions, is not to the contrary. The licensing agreement at issue in *Graham* authorized the licensee to sell the copyright owner's work, without limitation, in exchange for the licensee's promises to pay royalties for each copy sold. *Id.* at 233–34. When the licensee failed to make the payments as promised, the copyright owner sued for infringement. *See id.* The Second Circuit held that the publisher's promise to pay royalties was a covenant, rather than a condition, of the license. Thus, the publisher's breach of that promise, without more, did not void the license. Because the publisher had a valid license to make and sell the copies at issue, no infringement had occurred, notwithstanding the publisher's breach of the contract. *See id.* at 237–38.

Unlike the copyright owner in *Graham*, Pelaez does not base his infringement claim on nonpayment of royalties. Rather, Pelaez contends that the licenses conveyed by Corbis were limited in scope; that McGraw-Hill exceeded the limitations imposed by the license; and that, in doing so, McGraw-Hill violated Pelaez's exclusive rights under the copyright laws. Where, as here, a copyright owner claims that a defendant "acted outside the scope of its license, [he or she] properly claim[s] copyright infringement, not breach of contract." *Spinelli*, 903 F.3d at 202; *see also Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 44 (2d Cir. 2019) ("[B]ecause copyright licenses prohibit any use not authorized, a licensee infringes the owner's copyright if its use exceeds the scope of its license."). This type of claim does not require the court to consider whether a particular contract term was a condition or a covenant.

Although this conclusion is supported by the weight of Second Circuit authority, it

nevertheless conflicts with two recent decisions from this district. *See Muench Photography, Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. 12-CV-6595 (LAP), 2019 WL 1302789 (S.D.N.Y. Feb. 4, 2019) (Preska, J.); *Sohm v. Scholastic Inc.*, No. 16-CV-7098 (JPO), 2018 WL 1605214 (S.D.N.Y. Mar. 29, 2018) (Oetken, J.).[1] Both decisions held that "[w]hether a licensee has acted outside the scope of the license depends on whether the terms of the license were covenants or conditions." *Sohm*, 2018 WL 1605214, at \*12 (quoting *BroadVision, Inc. v. Med. Protective Co.*, No. 08-CV-1478 (WHP), 2010 WL 5158129, at \*3 (S.D.N.Y. Nov. 23, 2010) (Pauley, J.)); *see also Muench*, 2019 WL 1302789, at \*6. Applying this rule, both decisions concluded that where a license limits the number of copies of a photograph which may be made, such limitations are "best characterized as covenants, rather than conditions[,]" and thus no claim lies in copyright if a defendant exceeds those limitations. *Sohm*, 2018 WL 1605214, at \*13; *see also Muench*, 2019 WL 1302789, at \*5.

The Court declines to follow *Sohm* and *Muench* in this respect. Both decisions rely primarily on *BroadVision* for the rule that whether a defendant's conduct exceeds the scope of a license depends on whether such conduct breaches a condition of the license. But *BroadVision* did not involve a restricted license. Rather, the licensing agreement at issue in *BroadVision* permitted unlimited use of the copyrighted work so long as payment for that use was made. *See* 2010 WL 5158129, at \*2. In that respect, *BroadVision*'s facts were analogous to *Graham*'s— that is, the core of the parties' dispute was the alleged failure to pay monies due under a contract. The present case is distinguishable because Pelaez alleges that the licenses that authorized McGraw-Hill to copy his work were limited in scope, not simply that McGraw-Hill did not pay

---

[1] In its Reply, McGraw-Hill also relies on *Tangorre v. Mako's, Inc.*, No. 01-CV-4430 (BSJ) (DF), 2003 WL 470577, at \*10 (S.D.N.Y. Jan. 6, 2003) (Freeman, M.J.). Because the plaintiff in *Tangorre* did not contend that the defendant had exceeded the scope of its license, the analysis in *Tangorre* is not persuasive here.

10

money it owed to Corbis under the licensing agreements.

To the extent McGraw-Hill contends that its overuse was within the scope of the license because of what the parties refer to as the "ten-times payment clause," (McGraw-Hill Mem. 14), the Court disagrees. Under that provision, "in the event of unauthorized use," Corbis was entitled to bill McGraw-Hill "ten (10) times the normal license fee for any unauthorized use, or any other fees, damages, or penalties Corbis may be entitled to under this Agreement or applicable law." (2003 PPA, at 6; *see also* 2006 PPA, at 7.) The provision also states that "[u]nauthorized use of these Images constitutes copyright infringement," and that "[t]he foregoing is not a limiting statement of Corbis' rights or remedies in connection with any unauthorized use." (2003 PPA, at 6; *see also* 2006 PPA, at 7.) The existence of a potential contractual remedy, enforceable by Corbis, does not negate the express limitations imposed on the licenses granted to McGraw-Hill.

For the reasons above, McGraw-Hill's motion for summary judgment is DENIED to the extent it relies on the argument that, to prove infringement, Pelaez must show that the limitations on the licenses were conditions rather than covenants.

### B. Statutory Damages

McGraw-Hill next moves for summary judgment on the issue of Pelaez's eligibility for statutory damages.

A copyright infringer "is liable for either — (1) the copyright owner's actual damages and any additional profits of the infringer, . . . ; or (2) statutory damages." 17 U.S.C. § 504(a). "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement," *id.* § 504(b), but "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages," *id.* § 504(c)(1).

11

Under 17 U.S.C. § 412, to be eligible for an award of statutory damages, a copyright owner must have registered his work prior to the date on which infringement commenced. "Statutory damages may not be awarded even if infringement, commenced before registration, continues after [the effective date of] registration." *Ushodaya Enters., Ltd. v. V.R.S. Int'l, Inc.*, 64 F. Supp. 2d 352, 353 (S.D.N.Y. 1999) (Cedarbaum, J.), *aff'd*, 2 F. App'x 128 (2d Cir. 2001).

McGraw-Hill argues that, with respect to 477 of his 573 claims, Pelaez has failed to identify when McGraw-Hill's alleged infringement "commenced" and therefore cannot carry his burden to show his entitlement to statutory damages. (McGraw-Hill Mem. 16.) Pelaez acknowledges he will bear the burden of proving statutory damages at trial, but nevertheless contends that McGraw-Hill is not entitled to summary judgment unless it comes forward with evidence demonstrating that the infringements did *not* occur prior to the registration of the photographs' copyrights. (Pelaez Opp'n 10.)

Pelaez is incorrect. "A defendant does not have to introduce evidence that would negate the possibility of damages in order to move for summary judgment." *Vaughn v. Consumer Home Mortg. Co.*, 297 F. App'x 23, 27 (2d Cir. 2008). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Simsbury-Avon Pres. Soc'y*, 575 F.3d at 204 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

These standards "appl[y] to damages the same as [they] appl[y] to liability." *Seoul Broad. Sys. Int'l, Inc. v. Sang*, 754 F. Supp. 2d 562, 567 (E.D.N.Y. 2010). Although, as Pelaez points out, 17 U.S.C. § 504 permits a copyright owner to elect to recover statutory damages in

12

lieu of actual damages "at any time before final judgment," this does not bar McGraw-Hill from litigating Pelaez's entitlement to statutory damages at the summary judgment stage. *See, e.g.*, *Papazian v. Sony Music Entm't*, No. 16-CV-07911 (RJS), 2017 WL 4339662, at \*6 (S.D.N.Y. Sept. 28, 2017) (Sullivan, J.) (holding that defendant was entitled to summary judgment where "plaintiff provide[d] absolutely no evidence 'from which a reasonable inference in [his] favor may be drawn'" on the issue of his entitlement to statutory damages, (quoting *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007))); *Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 326 (S.D.N.Y. 2008) (Castel, J.) (granting defendants' motion for summary judgment "to the extent that plaintiff may not recover statutory damages").

McGraw-Hill has "point[ed] to a lack of evidence" regarding Pelaez's eligibility for statutory damages. In response, Pelaez has not come forward with any evidence. Instead, Pelaez contends only that "there is not sufficient evidence in the record to determine whether [the] infringements occurred before the applicable registrations were issued."[2] (Pelaez Opp'n 10–11.) This assertion is not sufficient to raise a genuine issue of fact for trial.

For the foregoing reasons, summary judgment is GRANTED in favor of McGraw-Hill to the extent that Pelaez may not seek statutory damages for the claims listed in paragraph 20 of Pelaez's 56.1 Response, with the exception of the claims described in Rows 341 and 473 of Exhibit 1 to the TAC.[3] As to the latter two claims, summary judgment is DENIED because

---

[2] Although Pelaez states that he sent corrected damages disclosures to McGraw-Hill on April 23, 2018, and that these corrected disclosures identified damages for certain additional rows, *see* Pelaez Counterresp. ¶ 19, Pelaez does not explain how this should affect the Court's analysis.

[3] Specifically, Pelaez may not seek statutory damages for the following claims: (a) TAC, Ex. 1, Rows 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 64, 66, 67, 68, 69, 70, 71, 72, 73, 75, 76, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 142, 143, 145, 147, 148, 149, 150, 151, 153, 154, 155, 156, 158, 159, 160, 162, 163, 164, 165, 166, 167, 171, 172, 173, 174, 176, 177, 178, 179, 180, 181, 182, 184, 185, 186, 187, 189, 190, 191, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 222, 223, 224, 225, 227, 228, 229, 230, 231, 232, 233,

13

Pelaez did, in fact, provide information regarding his eligibility for statutory damages in connection with those two claims.

## C. Registration

McGraw-Hill next argues that the copyright registrations applicable to Pelaez's remaining ninety-seven claims (the "Corbis Registrations") are invalid for failure to comply with 17 U.S.C. § 409, and therefore those claims must be dismissed.

Under 17 U.S.C. § 411(a), "no civil action for infringement . . . shall be instituted until . . . registration of the copyright claim has been made in accordance with [the Act]." Section 411's registration requirement is a "precondition to filing a claim." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010). For this reason, "[t]he absence of a valid copyright registration . . . bar[s] a plaintiff from bringing a viable copyright infringement action.'" *Sohm*, 2018 WL 1605214, at *3 (second alteration in *Sohm*) (quoting *L.A. Printex Indus., Inc. v. Le Chateau, Inc.*, No. 11-CV-4248, 2012 WL 987590, at *3 (S.D.N.Y. Mar. 23, 2012) (Swain, J.)).

"[R]egistration . . . has been made within the meaning of 17 U.S.C. § 411(a) . . . when the Register has registered a copyright after examining a properly filed application." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019). Under 17 U.S.C. § 409, "in the case of a work other than an anonymous or pseudonymous work," an application for copyright registration must include, among other things, "the name and nationality or domicile of

234, 235, 236, 238, 240, 241, 242, 243, 244, 245, 246, 247, 248, 250, 251, 252, 253, 254, 256, 257, 259, 261, 263, 264, 265, 266, 267, 268, 269, 270, 271, 272, 273, 274, 275, 276, 277, 278, 280, 281, 282, 283, 284, 285, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 298, 302, 303, 304, 305, 307, 308, 309, 310, 312, 313, 314, 315, 316, 317, 318, 320, 321, 322, 323, 324, 325, 326, 327, 328, 329, 330, 331, 332, 335, 336, 337, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 354, 355, 356, 357, 358, 360, 362, 365, 366, 367, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, 380, 382, 383, 384, 385, 386, 388, 389, 390, 391, 393, 395, 397, 398, 399, 400, 401, 402, 404, 405, 406, 407, 408, 409, 411, 412, 413, 417, 420, 421, 422, 423, 424, 425, 426, 427, 428, 429, 430, 431, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 451, 452, 453, 454, 455, 456, 457, 458, 459, 460, 461, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, 486, 487, 488, 491, 492, 494, 495, and 496; (b) TAC, Ex. 2, Rows 5, 11, 12, 13, 14, 15, 16, 18, 19; and (c) TAC, Ex. 3, Rows 1, 6, 7, 8, 9, 10, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 30, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 45, 47, 48, 49, 50, 51, 53, 55, and 57.

14

the author or authors; . . . [and] the title of the work."

The Corbis Registrations were obtained beginning in 2002 as part of a program in which Pelaez transferred his copyright in the photographs to Corbis for the express purpose of allowing Corbis to register the photographs' copyrights.[4] (*See* Pelaez Decl. ¶ 4 (ECF No. 124).) Corbis then submitted a single application to the Register of Copyrights, purporting to register a database that included the work of multiple photographers, including that of Pelaez. Once this "bulk registration" was complete, Corbis then assigned ownership of the copyrights back to Pelaez. It is undisputed that Pelaez is not named, and the titles of the Pelaez's photographs are not listed, on the face of the Corbis Registrations. (Pelaez Counterresp. ¶¶ 15–16; Pelaez Opp'n 11.)

Courts in this district disagree on whether this type of bulk registration validly registers the individual works in the databases for the purposes of an infringement suit. Pelaez urges the Court to follow *Sohm*, 2018 WL 1605214, at \*5, which held that, where a registrant owns the copyright to the components in a database at the time of registration, the registration of that database is valid as to its component works. The Fourth and Ninth Circuits have reached the same conclusion. *See Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 682 (9th Cir. 2014); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 597 (4th Cir. 2013). McGraw-Hill urges the Court to follow *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, 712 F. Supp. 2d 84, 95 (S.D.N.Y. 2010) (Preska, J.), *reconsidered on other grounds*, No. 09-CV-2669 (LAP), 2010 WL 3958841 (S.D.N.Y. Sept. 27, 2010), which held precisely the opposite.

In *Sohm*, the Court explained that the key word in § 409 is "work," not author," and that

---

[4] McGraw-Hill challenges the registrations only on the basis that they did not comply with § 409 of the Act. It does not dispute that the copyrights were properly assigned to Corbis and then properly assigned back to Pelaez.

15

under 17 U.S.C. § 101, a collective work—such as the databases registered by Corbis—is a type of "work." 2018 WL 1605214, at \*4 (citing *Alaska Stock*, 747 F.3d at 681); *see also* 17 U.S.C. § 101 ("A 'collective work' is a work . . . in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole."). Therefore, the "author" and "title" required to be named under 17 U.S.C. § 409(2) and (6) are those of the collective work, not of each component work. *Sohm*, 2018 WL 1605214 at \*4 (citing *Alaska Stock*, 747 F.3d at 681).[5]

The Court finds *Sohm*'s reasoning persuasive, and therefore holds that the Corbis Registrations are valid. The Court further holds that the Corbis Registrations extend to Pelaez's photographs, for the reasons explained in *Alaska Stock.*, 747 F.3d at 685.

*Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 72 (2d Cir. 2001)*, clarified on denial of reh'g*, 283 F.3d 502 (2d Cir. 2002), *abrogated on other grounds*, *Reed Elsevier*, 559 U.S. 154, on which McGraw-Hill relies, is not to the contrary. The issue in *Morris* was whether a collective work registration could extend to component works where the copyright registrant of the collective work did not own the copyright in the component works. *Id.* Here, by contrast, Pelaez transferred ownership of the copyright in his works to Corbis prior to registration. Thus, at the time Corbis applied for registration, it owned the component works now at issue. "Under the law of this Circuit, where the owner of a copyright for a collective work also owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action under § 411(a) for the constituent part." *Id.* at 68 (citing *Streetwise Maps,*

---

[5] The *Sohm* Court reached this conclusion based on the plain text of the Act. 2018 WL 1605214, at \*5. It added, however, that even if the statutory text were ambiguous, it would reach the same conclusion because the Copyright Office's own interpretation of 17 U.S.C. § 409 did not require the application for registration of a collective work to contain the names of all the photographers. *Id.* This Court agrees with *Sohm* that the Copyright Office's interpretation is entitled to *Skidmore* deference. *See id.*

16

*Inc. v. Vandam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998)).

McGraw-Hill's motion for summary judgment is therefore DENIED insofar as it relates to the invalidity of the Corbis Registrations.

### D. Damages

McGraw-Hill next moves for summary judgment in its favor on the issue of whether Pelaez may recover damages for infringement that occurred prior to July 7, 2013, three years before he filed the initial complaint in this case. (McGraw-Hill Mem. 25.)

Under 17 U.S.C. § 507(b), "[n]o civil action shall be maintained under the provisions of this [Act] unless it is commenced within three years after the claim accrued." This Circuit follows a discovery rule, pursuant to which "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014). Pelaez argues that, under the discovery rule, damages are recoverable "for all infringements, regardless of when they occur, as long as a complaint is timely filed." (Pelaez Opp'n 25.) McGraw-Hill disagrees and contends that timely claims are subject to the additional limitation that damages may not be recovered for infringement that occurred more than three years before the filing of the complaint. McGraw-Hill relies on *Petrella*, 572 U.S. 663, to support this argument.

In *Petrella*, the Supreme Court held that the equitable defense of laches cannot bar relief on an infringement claim brought within three years of the occurrence of the allegedly infringing conduct. 572 U.S. at 667. The plaintiff in *Petrella* was aware that the defendant was infringing her copyright as early as nine years before she brought suit. *Id.* at 674. When she finally took legal action, she sought relief only for discrete acts of infringement that occurred within the three-year period before she filed suit. *Id.* at 674–75.

In concluding that laches could not be asserted as a defense to infringement in this

instance, the Supreme Court repeatedly stressed that under 17 U.S.C. § 507(b), "a successful plaintiff can gain retrospective relief only three years back from the time of suit. No recovery may be had for infringement in earlier years." *Id.* at 677; *see also id.* at 672 ("§ 507(b)'s limitations period[] . . . allows plaintiffs during that lengthy term to gain retrospective relief running only three years back from the date the complaint was filed."); *id.* at 675 (noting that the plaintiff "recognize[d]" that "no relief . . . can be awarded for infringing acts prior to" three years before her complaint was filed).

In the wake of *Petrella*, courts in this district have applied one of two contradictory, bright-line rules. Some courts have held that, even if a plaintiff's complaint is timely under the discovery rule, he or she nonetheless may not recover damages for infringements that occurred more than three years prior to the commencement of his or her suit. *See Craig v. UMG Recordings, Inc.*, No. 16-CV-5439 (JPO), 2019 WL 1432929, at *5 (S.D.N.Y. Mar. 29, 2019) (Oetken, J.) ("After a plaintiff has established the timeliness of his or her claim with respect to any one particular act, . . . [he or she may] recover damages for only those infringing acts that occurred within three years of the filing of the complaint."); *Papazian,* 2017 WL 4339662, at *3 (holding that when infringing acts occur over time, damages are only recoverable for infringements that occurred within the three years prior to the filing of the complaint); *Wu v. John Wiley & Sons, Inc.*, No. 14-CV- 6746 (AKH) (AJP), 2015 WL 5254885, at *7 (S.D.N.Y. Sept. 10, 2015) (Peck, M.J.) (holding that, "[f]ollowing *Petrella*, [the copyright owner] can recover damages only for any . . . infringing acts that occurred on or after" three years before he filed suit).[6]

---

[6] In *Papazian*, Judge Sullivan also considered whether *Petrella* might bar actual damages for infringement that occurred more than three years prior to filing suit, but not bar statutory damages for such infringement. *See* 2017 WL 4339662, at *6 (holding that "[t]he most straightforward interpretation of *Petrella* . . . is that no recovery of any kind, including statutory damages, is permitted for infringing acts occurring more than three years prior to

18

Other courts have held that, notwithstanding *Petrella*, so long as a plaintiff's complaint is timely under the discovery rule, he or she may collect damages on the underlying claims. *See PK Music Performance, Inc. v. Timberlake*, No. 16-CV-1215 (VSB), 2018 WL 4759737, at *10 (S.D.N.Y. Sept. 30, 2018) (Broderick, J.) ("[I]t would be inconsistent with the discovery rule to apply the three-year lookback."); *Sohm*, 2018 WL 1605214, at *11 (refusing to limit damages to three years before filing); *Energy Intelligence Grp., Inc. v. Scotia Capital (USA) Inc.*, No. 16-CV-0617, 2017 WL 432805, at *2 (S.D.N.Y. Jan. 30, 2017) (Castel, J.) ("Under no reasonable reading of *Petrella* could the opinion be interpreted to establish a time limit on the recovery of damages separate and apart from the statute of limitations.").

This Court agrees with those courts that have held that a plaintiff may not reach back to recover damages for infringement that occurred more than three years before filing suit. *See Papazian*, 2017 WL 4339662, at *4–5. "When infringing acts occur over time," the determination of when a plaintiff's claim accrues is a separate inquiry from the question of "which, if any, of the multiple infringing acts trigger actual or statutory damages under the Copyright Act." *Id.* at *4. To make the damages determination, "[t]he Second Circuit has always applied [a] rolling approach," under which damages may be recovered only for infringing acts that occurred up to three years before the filing of the complaint, "such that the passage of each additional day forecloses one more day of past damages." *Id.*

As courts in this district have pointed out, there is "doctrinal tension" in applying both a three-year damages lookback and the discovery rule. *Id.* at *5 n.5; *see also PK Music Performance*, 2018 WL 4759737, at *10 ("Applying the three-year lookback . . . would effectively impose the injury rule[, pursuant to which a copyright owner's claim accrues on the

<hr>

suit"). Neither party here advances this argument, and so the court does not consider it.

19

date of the infringement]."). But the Court is not free to ignore *Petrella*'s language concerning the availability of retrospective relief, and it also is not free to depart from the discovery rule. *See Papazian*, 2017 WL 4339662, at *5 n.5 ("The Court remains bound by the Second Circuit's decision to apply the discovery rule in *Psihoyos*, while at the same time, *Petrella* requires this Court to apply the rolling approach in determining Plaintiff's entitlement to damages."). The doctrinal tension is thus unavoidable in this instance.

Pelaez does not dispute McGraw-Hill's assertion that it "did not print or distribute the titles implicated in 94 of the claims in the TAC between July 3, 2013, and July 3, 2016." (McGraw-Hill Mem. 25.) Accordingly, McGraw-Hill's motion for summary judgment is GRANTED to the extent that Pelaez may not recover damages—actual or statutory—for the ninety-four claims in the TAC that are based on conduct that occurred entirely prior to July 6, 2013.[7]

## IV.   Pelaez's Motion

Pelaez moves for summary judgment on 129 of his claims.[8]   In support of his motion, Pelaez argues that, although McGraw-Hill obtained licenses to reproduce the photographs at issue, those licenses expressly limited the number of copies McGraw-Hill was permitted to make, and McGraw-Hill exceeded those limitations. In response, McGraw-Hill argues that summary judgment is inappropriate because: (1) the registrations on which Pelaez relies for these claims

---

[7] These claims are listed in TAC, Ex. 1, Rows 1, 2, 3, 4, 6, 7, 12, 13, 41, 42, 48, 50, 83, 84, 85, 86, 87, 88, 89, 91, 101, 123, 124, 125, 126, 127, 138, 142, 143, 144, 145, 146, 151, 152, 153, 154, 157, 160, 161, 162, 163, 164, 166, 167, 168, 169, 170, 171, 172, 173, 179, 182, 183, 184, 185, 186, 187, 200, 210, 217, 218, 219, 220, 221, 222, 223, 233, 234, 235, 236, 242, 252, 253, 261, 271, 274, 275, 291, 292, 304, 308, 315, 412, 427, 455, 456, 458, 459, 461, 462, 463, 471, 472, and 482.

[8] These claims are listed in TAC, Ex. 1, Rows 3, 5, 8, 10, 14, 15, 28, 30, 31, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 84, 85, 86, 87, 88, 89, 91, 94, 95, 96, 97, 102, 103, 104, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 118, 119, 120, 121, 125, 131, 132, 133, 139, 140, 141, 146, 149, 150, 166, 176, 177, 188, 189, 192, 193, 194, 195, 196, 197, 203, 242, 244, 257, 266, 268, 269, 270, 272, 285, 286, 293, 302, 303, 315, 316, 318, 321, 324, 325, 346, 366, 376, 377, 378, 379, 380, 386, 387, 388, 389, 390, 391, 393, 396, 397, 398, 399, 400, 401, 402, 405, 406, 407, 408, 418, 428, 433, 453, 457, 474, 477. (*See* Kerr Decl., Ex. 1 (ECF No. 123).)

20

are invalid, and therefore Pelaez cannot show that he owned a copyright in the photos; (2) there is a genuine dispute of material fact as to when Pelaez knew of, or reasonably should have known of, these claims; and (3) there is a genuine dispute of material fact as to whether its use of the photographs was authorized.

### A. Registration

McGraw-Hill first contends that Pelaez is not entitled to summary judgment on the claims at issue because the Corbis Registrations are invalid with respect to Pelaez's photographs. The Court disagrees. The Corbis Registrations are valid as to Pelaez's photographs for the reasons explained *supra* in Section I.C.

### B. Statute of Limitations

McGraw-Hill next contends that Pelaez is not entitled to summary judgment on any of his claims because he knew, or had reason to know, of McGraw-Hill's unauthorized use of his photographs, if any, prior to July 6, 2013. If McGraw-Hill were correct on this point, Pelaez's claims would be time-barred under 17 U.S.C. § 507(b).

Under the discovery rule adopted by the Second Circuit in *Psihoyos*, 748 F.3d at 125, a claim is timely so long as it is brought within three years of its discovery. The date of discovery "will be later than the date of [infringement] only to the extent that plaintiff exercised reasonable diligence but remained unaware of the [infringement]." *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 464 (S.D.N.Y. 1999) (Motley, J.).

McGraw-Hill does not dispute that Pelaez became aware of the infringements he alleges in late 2014 (McGraw-Hill 56.1 Counter ¶ 97), but nevertheless contends that Pelaez's claims are untimely, for two reasons. First, McGraw-Hill argues that Pelaez's experience in the stock photography industry—which includes more than thirty years of experience as a professional photographer, nearly 20 years as a stock photography business owner, and unspecified dealings

21

with publishing clients—should have put him on "inquiry notice" to investigate any potential misuse of his work prior to July 3, 2013. (McGraw-Hill Opp'n 17–18.) Second, McGraw-Hill argues that Corbis's knowledge should be imputed to Pelaez for purposes of 17 U.S.C. § 507, and that Corbis was aware of potential claims of infringement as early as May 2009. (*Id.*)

Both of McGraw-Hill's arguments regarding notice are unpersuasive. First, general knowledge of an industry, or experience in an industry, does not trigger the running of the statute of limitations in 17 U.S.C. § 507. *See Wu v. John Wiley*, 2015 WL 5254885, at *6 (collecting cases). Pelaez's understanding of the stock photography industry, without more, does not demonstrate that a reasonable person exercising due diligence would have discovered the infringement alleged.

Second, an agent's knowledge is properly imputed to his or her principal for statute of limitations purposes only where the "agent is employed to represent [the] principal with respect to a given matter and acquires knowledge material to that representation." *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994). This rule has been applied where a party's lawyer acquires knowledge about his or her claim. *See, e.g.*, *id.* at 725 (holding that a claim "may have accrued as early as" the date on which claimant's counsel became aware of facts underlying claim); *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 558 F. Supp. 2d 378, 396 (E.D.N.Y. 2008), *aff'd*, 710 F.3d 57 (2d Cir. 2013) (holding that the statute of limitations began to run when plaintiff's counsel knew of facts giving rise to claim). To the extent it applies in situations where the agency relationship is something other than that of lawyer-client, its application is narrower than McGraw-Hill suggests. For example, in *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 381 F. Supp. 2d 334, 339 (S.D.N.Y. 2005) (McMahon, J.), on which McGraw-Hill relies, the agents (1) had been "formally appointed" by the plaintiffs to receive all communications from the defendant concerning the actions which

formed the bases of plaintiffs' claims; (2) had "threaten[ed the defendant] with litigation"; and (3) had attempted to effect a global settlement on behalf of the plaintiffs.

The record here demonstrates that the scope of Corbis's agency was limited to representing Pelaez in the sublicensing of his photographs. (*See* Pelaez Decl., Exs. 6–10.) McGraw-Hill does not offer any evidence to show that Corbis was authorized to represent Pelaez in connection with the legal claims now before the Court. *Cf. Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, 280 F.R.D. 130, 141 (S.D.N.Y. 2012) (Baer, J.) (holding that, where attorney had not yet been retained as plaintiff's legal representative, attorney's knowledge could not be imputed to plaintiff for statute of limitations purposes). Because Corbis cannot be considered Pelaez's agent with respect to Pelaez's copyright claims, it would be improper to attribute Corbis's knowledge of the claims, if any, to Pelaez for statute of limitations purposes.

In sum, because McGraw-Hill is incorrect that Corbis's knowledge may be imputed to Pelaez for statute of limitations purposes, it has not identified any dispute of material fact regarding the date on which Pelaez's claims accrued.

## C. License

McGraw-Hill lastly contends that Pelaez is not entitled to summary judgment on the claims at issue because it had permission, either express or implied, from Corbis to use Pelaez's photographs in the manner alleged in the TAC. The Court addresses each argument in turn.

1. Express License

a. Legal Standard

"Copyright disputes involving only the scope of the alleged infringer's license present the court with a question that essentially is one of contract: whether the . . . license agreement encompasses the defendant's activities." *Bourne*, 68 F.3d at 631; *see also Great Minds v. Fedex Office & Print Servs., Inc.*, 886 F.3d 91, 94 (2d Cir. 2018) ("Copyright licenses are generally

construed according to principles of contract law.").

"In a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous, which is a question of law for the court." *Great Minds*, 886 F.3d at 94 (internal citations and quotation marks omitted). "Under New York law," which the parties agree applies to the interpretation of the agreements entered into by McGraw-Hill and Corbis, "courts must consider how the contract would be understood 'by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs . . . and terminology as generally understood in the particular trade or business.'" *Id.* (omission in *Great Minds*) (quoting *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156–57 (2d Cir. 2016)). "Where the parties dispute the meaning of particular contract clauses, the task of the court 'is to determine whether such clauses are ambiguous when read in the context of the entire agreement' . . . ." *Law Debenture Tr.*, 595 F.3d at 467 (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993)).

"[I]f [the agreement] is straightforward and unambiguous, its interpretation presents a question of law for the court to be made without resort to extrinsic evidence." *Spinelli*, 903 F.3d at 200 (quoting *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005)). "If 'specific [contract] language is susceptible of two reasonable interpretations,'" however, "the contract is ambiguous as a matter of law." *Great Minds*, 886 F.3d at 94 (alteration in *Great Minds*) (quoting *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244 (2014). Only then may extrinsic evidence of the parties' intent be considered. *Law Debenture Tr.*, 595 F.3d at 465.

### b.  Application

During the relevant time period, the licenses granted to McGraw-Hill were governed by two sets of documents: the PPAs entered into by Corbis and McGraw-Hill and invoices issued by Corbis to McGraw-Hill.

24

The parties appear to agree that Corbis and McGraw-Hill intended both the PPAs and the Invoices to govern the scope of McGraw-Hill's licenses to reproduce Pelaez's photographs. Even if the parties were to disagree on this point, "[u]nder New York law, 'all writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together.'" *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 89 (2d Cir. 2005) (second alteration in *TVT Records*) (quoting *This is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998)). Whether the parties intended the agreements to be read as one contract "[is] determine[d] from the circumstances surrounding the transaction," *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 237 (2d Cir. 2006), and "if the documents in question reflect no ambiguity as to whether they should be read as a single contract, the question is a matter of law for the court," *TVT Records*, 412 F.3d at 89. Here, it is clear that the documents were intended to be read as one contract because: (1) the 2003, 2006, 2009, and 2014 PPAs expressly refer to the invoices; (2) the invoices do not contain price terms, which are supplied by the PPAs; (3) each agreement was entered into by McGraw-Hill and Corbis or Corbis's predecessor-in-interest, The Stock Market; (4) the PPAs and the invoices each serve the same overarching purpose—namely, to set the terms of the agreement between Corbis and McGraw-Hill. *Cf. Arciniaga*, 460 F.3d at 237 (discussing and applying these factors in analyzing whether two agreements should be read as a single contract).

The parties disagree, however, as what effect to give the terms of each set of documents. Pelaez contends that the terms included in the invoices limited the scope of McGraw-Hill's licenses, whereas McGraw-Hill contends that it was entitled to make additional uses beyond those described in the invoices. [9] Specifically, McGraw-Hill argues that proper determination of

---

[9] Pelaez uses the term "license" interchangeably with the term "invoice" throughout his briefing. Because the term "license" assumes a legal conclusion, the Court substitutes the word "invoice" as necessary when quoting Pelaez.

25

the scope of its licenses requires consideration of (1) the invoices; (2) the PPAs; and (3) the course of dealing between McGraw-Hill and Corbis. (*See* McGraw-Hill Opp'n 10–13.)

For the reasons that follow, the Court agrees with Pelaez that McGraw-Hill has failed to show that there is a dispute of material fact as to whether it had an express license to use Pelaez's photographs.

### (i)     Usage Prior to 2003

The PPAs relied on by McGraw-Hill in support of its express license argument date back to January 1, 2003. (*See id.* at 13.) Pelaez alleges infringement dating back to 1994. (Pelaez 56.1 Counterresp. ¶ 10.) Because there was no PPA in effect when the pre-2003 invoices were issued, the PPAs are not probative of the scope of any express license issued by Corbis prior to 2003. The scope of any express license granted by Corbis to McGraw-Hill prior to January 1, 2003, is therefore properly determined by the relevant invoices alone, if any.

### (ii)     The 2003 and 2006 PPAs

As relevant here, the 2003 and 2006 PPA are substantively identical. (*See* Beall Decl., Ex. 6 ("2003 PPA"); *id.*, Ex. 7 ("2006 PPA").) Both PPAs unambiguously provide that the licenses granted by Corbis to McGraw-Hill are limited by the terms of the invoices.

As relevant here, the 2003 and 2006 PPAs each state:

> Images obtained from Corbis are licensed on a non-transferable, onetime, non-exclusive basis, and are strictly limited to the use, medium, time period, print run, placement, size of Image, territory, and any other restrictions *indicated in the invoice* or contained on Corbis' online site, and are licensed for use within one year from the date of the invoice, or sixty (60) days for internal evaluations ("comps").

(2003 PPA, at 6 (emphasis added); 2006 PPA at 6 (emphasis added).). Both PPAs further provide that McGraw-Hill's "ability to access an Image does not in itself entitle [it] to use that Image," and that, "[u]nless otherwise specified in a separate writing signed by Corbis, [McGraw-

26

Hill's] reproduction of Images is limited to (i) internal evaluation or comps, or (ii) the specific use described in your invoice, which together with these terms shall constitute the full license granted." (2003 PPA, at 6; *id.*, 2006 PPA, at 6.)

McGraw-Hill does not offer any competing interpretation of the above-quoted portions of the PPAs, and the Court is not aware of one.

### (iii) The 2009 PPA

As with the 2003 and 2006 PPAs, there is no language in the 2009 PPA that abrogates the print run limitations specified in the invoices. (*See* Beall Decl., Ex. 8 ("2009 PPA").) To the contrary, the 2009 PPA explicitly incorporates the terms of the invoices, stating that Corbis grants McGraw-Hill "a limited, non-exclusive right to use the Rights Managed Content licensed hereunder to create and exploit the End Use solely as specified in the PPA, *as modified by the Invoice*, and expressly as limited in the Specific Content Web Pages and the terms and conditions herein." (*Id.* at 10 (emphasis added).) The 2009 PPA continues:

> *As stated in the Invoice*, the license granted hereunder for the applicable Rights Managed Content allows You to use the Rights Managed Content obtained hereunder for ten years from the date the applicable Invoice is Issued. Except where specifically permitted in the Agreement, You may not distribute, publish, display or otherwise use in any way, the Rights Managed Content, including without limitation the End Use after the end of the applicable License Term for that Image.

(*Id.* (emphasis added).)

In support of its argument that, under the 2009 PPA, the terms contained in the invoices did not limit McGraw-Hill's use of Pelaez's photographs, McGraw-Hill points to the 2009 PPA's "Increased Use" provision. That provision sets forth the fees applicable to an image in the event "McGraw-Hill desires to increase the total number of Unique Users after the initial license for such Image is granted." (*Id.* at 4.) It provides:

27

> [McGraw-Hill] may re-license such Image, however, the additional fee will be the greater of (i) the difference between the increased total usage fee and the fee already paid for such license by [McGraw-Hill], or (ii) \$35 per Image. [McGraw-Hill] acknowledges and agrees that Corbis will re-license images to [McGraw-Hill] following any License Term provided that Corbis still retains the right to represent and license such images.

(*Id.*) McGraw-Hill argues that this language "reflects the parties' mutual understanding of the preexisting circumstance of permission to use Corbis images." (McGraw-Hill Opp'n 12.)

McGraw-Hill's reliance on this provision is misplaced. By its plain text, the above-quoted language speaks to the price McGraw-Hill will pay in the event it elects to re-license an image. This conclusion is reinforced when the provision is read in the context of the 2009 PPA as a whole, which repeatedly incorporates the terms of the invoices by reference. Neither the Increased Use provision, nor the language of the 2009 PPA more broadly, support the conclusion that McGraw-Hill was authorized to reproduce Pelaez's images in unlimited quantities, thereby nullifying the print run limitations contained in the invoices. Therefore, to the extent McGraw-Hill argues that the 2009 PPA expressly authorized McGraw-Hill to reproduce Pelaez's photographs in quantities exceeding the limits set forth in the invoices, the Court disagrees.

#### (iv) The 2014 PPA

None of the photographs on which Pelaez's claims are based were invoiced after the effective date of the 2014 PPA. The Court thus does not see any reason to consider whether the 2014 PPA expressly granted McGraw-Hill a license to use Pelaez's photographs.

#### c. Conclusion

The PPAs and the invoices unambiguously limit the licenses granted to McGraw-Hill. Each PPA must be considered together with the relevant invoices, and there are not any terms in the PPAs that purport to abrogate the limitations contained in the invoices. Because the PPAs and the invoices are "straightforward and unambiguous, [their] interpretation presents a question

28

of law for the court to be made without resort to extrinsic evidence." *Spinelli*, 903 F.3d at 200 (quoting *Postlewaite*, 411 F.3d at 67). McGraw-Hill thus may not rely on the Spelman and Beacher Declarations, or any other extrinsic evidence, to create a dispute of fact as to the meaning of these documents. McGraw-Hill's express license argument must be rejected.

### 2. Implied License

McGraw-Hill also argues that, even if it did not have an express license to exploit Pelaez's photographs beyond the usage specified in the invoices, it had an implied license to do so.

#### a. Legal Standard

It is well-established that, like other contracts, a nonexclusive license to use copyrighted work may be implied from conduct. *See* Melville B. Nimmer & David Nimmer, 3 NIMMER ON COPYRIGHT § 10.03[7] (2019). Although the Second Circuit has not ruled on the precise circumstances under which an implied license may be found, the parties appear to agree that the correct test is whether "the totality of the parties' conduct" indicates an intent to grant permission to use the copyrighted work.[10] *Id.* The majority of Courts of Appeals that have considered the issue have adopted this test, as have several decisions from this district.[11] *See Corbello v. DeVito*, 777 F.3d 1058, 1067 (9th Cir. 2015) (holding that courts should focus on "the licensor's objective intent... as manifested by the parties' conduct"); *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 501 (5th Cir. 2012) (holding that an implied license may arise "where the totality

---

[10] Although Pelaez does not use the term "totality of the circumstances," he states that whether an implied license existed "comes down to whether there was a 'meeting of the minds' between the parties to permit the particular usage at issue." (Pelaez Reply 7.) In the Court's view, in this context, the phrase "meeting of the minds" is simply a different verbal formulation of the phrase "totality of the circumstances." To the extent there is any difference between the two, the Court adopts the totality of the circumstances test.

[11] The caselaw does not make clear whether the source of the totality of the circumstances test is state law or federal law. Because the parties do not argue the standard would differ depending on whether state or federal law applies, that Court need not, and does not, address that issue here.

of the parties' conduct supported such an outcome"); *Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 41 (1st Cir. 2010) (holding that the proper test is "whether 'the totality of the parties' conduct indicates an intent to grant such permission" (quoting 3 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 10.03[A][7], at 10–42 (2000)); *Thomas M. Gilbert Architects, P.C. v. Accent Builders And Developers, LLC*, 377 F. App'x 303, 307–08 (4th Cir. 2010) (holding that the totality of the circumstances test applies unless there is a valid written agreement between the parties); *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 119–124 (S.D.N.Y. 2012) (Oetken, J.) (discussing implied license cases and noting that "whichever test is applied, the question comes down to whether there was a 'meeting of the minds' between the parties to permit the particular usage at issue"); *but see Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 762 (7th Cir. 2016) (requiring, to find an implied license, that "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work" (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996)); *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 539 (S.D.N.Y. 2015) (McMahon, J.) (same)).

Because "an implied license to use a copyrighted work 'cannot arise out of the unilateral expectations of one party,'" *Design Options, Inc. v. BellePointe, Inc.*, 940 F. Supp. 86, 92 (S.D.N.Y. 1996) (Sweet, J.) (quoting *Allen–Myland v. International Business Machines Corp.*, 746 F.Supp. 520, 549 (E.D. Pa. 1990)), "the question [of implied license] comes down to whether there was a 'meeting of the minds' between the parties to permit the particular usage at issue," *Pearson*, 855 F. Supp. 2d at 124. The focus is on "the licensor's objective intent at the time of creation and delivery of the [copyrighted work] as manifested by the parties' conduct." *Corbello*, 777 F.3d at 1067 (quoting *Asset Marketing Sys., Inc. v. Gagnon*, 542 F.3d 748, 756 (9th Cir.

30

2008)). The parties here agree that, although Pelaez created the photographs at issue, the relevant intent for the purposes of whether an implied license was granted is that of Corbis, not Pelaez.

b.   Application

McGraw-Hill points to the following circumstances as raising an issue of fact as to its implied license defense: (1) the 2009 PPA contained a term describing how to calculate amounts owed by McGraw-Hill for the use of a photograph in excess of an initial invoice; (2) beginning by at least 2004, Corbis provided McGraw-Hill with unrestricted access to its archive of high-resolution images, prior to Corbis requesting payment for usage of the images; and (3) Corbis never refused a request by McGraw-Hill for a license. (McGraw-Hill Opp'n 11–12.) McGraw-Hill also relies on selective quotations from the declaration of Steve Spelman, who was employed by Corbis from May 2005 to May 2014, and worked on licensing issues.

The individual strands of evidence identified by McGraw-Hill must be considered in light of the record as a whole. For clarity, the Court divides the record evidence in three categories: (1) the parties' written agreements; (2) evidence of Corbis's conduct; and (3) the Spelman declaration. For the reasons that follow, McGraw-Hill has not established a triable issue of fact as to whether it had an implied license to use Pelaez's photographs.

(i)   The Written Agreements

As a threshold matter, Pelaez contends that any implied agreement allowing McGraw-Hill to exceed the print limitations contained in the invoices would impermissibly contradict the express written agreements. (Pelaez Reply 2–3.) This is incorrect. Pelaez's theory of infringement is that the licenses Corbis expressly granted to McGraw-Hill authorized McGraw-Hill to make a limited number of copies of his photographs; after McGraw-Hill "exhausted" the quota provided for by the license, that license effectively expired. (*Id.* at 6.) Under Pelaez's theory, there is no contradiction between the express written agreements, that covered only the

31

usage provided for therein, and an implied agreement, if any, that would cover reproduction beyond what was provided for by the express agreements.

Although the written agreements do not, standing alone, preclude an implied license, they are probative of the parties' intent. *See, e.g.*, *Pearson*, 855 F. Supp. 2d at 126 (holding that written agreements provided "compelling evidence of [the parties'] expectations" regarding whether a license to use copyrighted photographs had been granted). Several terms contained in the written agreements entered into by Corbis and McGraw-Hill are inconsistent with there being an implied license. As explained *supra* in Section IV.C.1, the written agreements provided, in various terms, that: McGraw-Hill's use of photographs obtained from Corbis was limited to the usage provided for in the invoices; McGraw-Hill's ability to access an image did not entitle it to use that image; and, reproduction of Corbis's images by McGraw-Hill was limited to internal use and "comps" and/or to the use specified in the invoice, unless otherwise specified in a writing signed by Corbis. (*See* Pelaez Reply 2–5.) The existence of repeated warnings regarding unauthorized use negate the interpretation that Corbis intended to grant McGraw-Hill a license to use Pelaez's photographs in excess of the quantities provided for in the invoices.

McGraw-Hill's argument to the contrary is unconvincing. McGraw-Hill contends that the 2009 PPA "reflects the parties' mutual understanding" that it had ongoing authorization to use Corbis's images, even in the absence of an invoice. (McGraw-Hill Opp'n 12.) In support of this argument, McGraw-Hill points to what it refers to as the "Increased Use" provision. That provision states, in relevant part:

> If [McGraw-Hill] desires to increase the total number of Unique Users after the initial license for such Image is granted, [McGraw-Hill] may re-license such Image, however, the additional fee will be the greater of (i) the difference between the increased total usage fee and the fee already paid for such license by [McGraw-Hill], or (ii) $35 per Image. [McGraw-Hill] acknowledges and agrees that Corbis will re-license images to [McGraw-Hill] following any

> License Term provided that Corbis still retains the right to represent
> and license such images.

(2009 PPA, at 4.) "Unique User" means "a discrete individual who receives access to a
Component." (*Id.* at 5.) "Component" is, in turn, defined as "an editorial work of intellectual
property published by McGraw-Hill . . . including but not limited to a textbook, trade, retail,
custom or reference book, a compendium, study guide, test bank, instructor manual, student
edition, teacher edition, quiz book, answer book, and other types such as overhead
transparencies, slide sets, PowerPoint of supplementary material." (*Id.*)

The above-quoted provision demonstrates the parties' shared understanding that, if
McGraw-Hill sought to use an image in quantities beyond those provided for by its initial license,
then Corbis would "re-license" that image to McGraw-Hill. It then sets forth the parties'
agreement concerning the price McGraw-Hill would pay in the event McGraw-Hill re-licensed
an image. It is not reasonable to infer from this provision that Corbis intended to grant McGraw-
Hill permission to use Pelaez's photographs beyond the scope of the invoices without first
securing additional permission—that is, without first "re-licensing" the photographs—to do so.
In sum, a reasonable factfinder could not infer from the written agreements that Corbis intended
to grant an implied license to McGraw-Hill.

### (ii)     Corbis's Conduct

McGraw-Hill points to the fact that Corbis never refused a request for an express license
as evidence of an implied license, relying on *Falcon Enter., Inc. v. Pubs. Serv., Inc.*, 438 F.
App'x 579, 581 (9th Cir. 2011). The record in *Falcon* established that the parties had "frequent
and informal interactions," which "contradicted" the plaintiff-copyright owner's "claim that
[defendant-]Publishers needed an express license for each image [they] published." *Id.* In
contrast to *Falcon*, the record here establishes that the parties engaged in a structured process for

licensing images, which included memorializing their agreements in writing. (*See, e.g.*, Spelman Decl. ¶ 15 (characterizing use absent an invoice as an "oversight" which "could occasionally happen").) *Falcon* is thus distinguishable. *See, e.g.*, *Frerck v. Pearson Educ., Inc.*, 63 F. Supp. 3d 882, 889 (N.D. Ill. 2014) ("In contrast to . . . *Falcon*, plaintiff and defendant abided by a formal protocol . . . "); *Bean v. Pearson Educ., Inc.*, 949 F. Supp. 2d 941, 946–47 (D. Ariz. 2013) ("In contrast to the informal course of conduct described in *Falcon* . . . here the parties engaged in a structured process . . . .").[12]

Moreover, McGraw-Hill fails to offer any evidence that Corbis knew McGraw-Hill was reproducing Pelaez's photographs in quantities beyond those specified in the invoices. *Cf. Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) (Baer, J.) (holding that copyright owner granted implied license where it knew of, and failed to object to, licensee's use of licensor's copyrighted work). The failure to provide evidence of Corbis's knowledge of McGraw-Hill's use distinguishes the present case from *Pearson*, on which McGraw-Hill relies.[13] In *Pearson*, 855 F. Supp. 2d 103, like in this case, a plaintiff-photographer brought claims of copyright infringement by against a publisher-defendant who had obtained the photographer's images from non-party agencies. The record on summary judgment established that the publisher used the photographer's copyrighted images before obtaining the agencies' written permission to

---

[12] Even McGraw-Hill's own conduct does not support its contention that it had an implied license. Throughout its briefing, McGraw-Hill contends that, under the terms of the alleged implied license, it would report to Corbis its usage, be invoiced for that usage, and pay for it. But it is undisputed that McGraw-Hill never reported to Corbis any of the print overruns Pelaez alleges, was never invoiced for the overruns, and never paid for the uses. McGraw-Hill's failure to act in accordance with what it contends were the parties' expectations further demonstrates that there was not a meeting of the minds as to McGraw-Hill's authorization to use Pelaez's photographs.

[13] McGraw-Hill also relies on Judge Failla's oral ruling at a hearing in *Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 13-CV-5023 (KPF) (S.D.N.Y. Jan. 28, 2016), denying summary judgment for the plaintiff in that case, arguing that *Lefkowitz* was "virtually identical" to this one. (McGraw-Hill Opp'n 3.) Because the transcript of the oral ruling does not divulge the precise basis for the ruling—that is, what facts were, in Judge Failla's view, sufficient to raise a triable issue regarding McGraw-Hill's implied license argument—McGraw-Hill's reliance on the *Lefkowitz* ruling is, in this regard, unhelpful.

34

do so, waiting "months—or even over a year—after publication to seek licenses for the images at issue." *Id.* at 127. In support of their implied license defense, the publishers "submit[ted] testimony . . . stating that they attended meetings during which representatives from [the stock photography agency] were made aware of this practice,"—that is, backdating invoices—"and at least tacitly approved of it." *Id.* at 128. The publishers also "submit[ted] numerous examples of invoices where the Agencies appear to have granted a license retroactively for other photographers and artists," in which "the 'invoice date' [wa]s, at times, months or even over a year after the 'start date' listed on the invoice." *Id.*

The sole fact in this record that supports McGraw-Hill's implied license argument is that, beginning by at least 2004, Corbis provided McGraw-Hill with unrestricted access to its archive of high-resolution images, prior to Corbis requesting payment for usage of the images. But under § 202 of the Copyright Act, "[t]ransfer of ownership of any material object . . . does not of itself convey any rights in the copyrighted work embodied in the object." 17 U.S.C. § 202. For that reason, mere delivery of copyrighted work to a putative licensee, standing alone, is not sufficient to give rise to an implied license. *See Corbello*, 777 F.3d at 1067.

### (iii)    The Spelman Declaration

As a threshold matter, Pelaez argues that the Spelman Declaration is inadmissible because it contradicts the testimony of Daniel Feduff, who Corbis designated as its Fed. R. Civ. P. 30(b)(6) witness. This contention—for which Pelaez fails to cite any authority—is incorrect. "[A]s with any other party statement [statements made in a 30(b)(6) deposition] are not 'binding' in the sense that the corporate party is forbidden to call the same or another witness to offer different testimony at trial." Wright & Miller, FED. PRAC. & PROC. CIV. § 2103 (3d ed.). That is particularly true where, as here, the 30(b)(6) testimony is from a non-party. McGraw-Hill is free to attempt to contradict or otherwise call into question Feduff's testimony with admissible

35

evidence.[14]

Although not inadmissible under Fed. R. Civ. P. 30(b)(6), the Spelman Declaration does not raise a material issue of fact regarding Corbis's intent to grant an implied license. Spelman's description of the relationship between Corbis and McGraw-Hill relied on formal, written agreements. He explains that under the PPAs and the parties' course of dealing, McGraw-Hill would select and download the images it wished to use, notify Corbis of the anticipated usage of the selected images, and request an invoice, which Corbis would then issue. (*See* Spelman Decl. ¶ 8.) To the extent Spelman addresses use outside the scope of an invoice, he characterizes such an occurrence as an "oversight," which "could occasionally happen." (*Id.* ¶ 15; *see also id.* ¶ 10 (noting that "*on occasion* . . . a Corbis invoice would sometimes not include a reference to certain kinds of use of the Corbis photos, such as in an electronic version of [McGraw-Hill]'s book").)

The Spelman Declaration at best establishes that Corbis "essentially looked the other way in the face of infringement." *See Palmer/Kane LLC*, 204 F. Supp. 3d at 575. Spelman's statement that "Corbis did not treat an ongoing, high-volume customer's use of a licensed photo . . . in excess of or beyond the terms of the invoice in question to be an instance of copyright infringement," (Spelman Decl. ¶ 14), does not establish the existence of an implied license. "[T]hat Corbis may have chosen not to view defendant's pre-license use as 'infringing' is neither here nor there. Infringement is infringement, regardless of what Corbis . . . may have chosen to call it." *See Palmer/Kane LLC*, 204 F. Supp. 3d at 575.

### 3. Conclusion

McGraw-Hill has not raised a triable issue of fact as to whether it was granted a license—

---

[14] There is one caveat. Spelman was employed by Corbis from May 2005 to May 2014. (Spelman Decl. ¶ 1.) Thus, his declaration is inadmissible to the extent it purports to offer evidence regarding whether Corbis granted McGraw-Hill an implied license prior to 2004.

express or implied—to use Pelaez's photographs. Because Pelaez has demonstrated that there is no material issue of fact as to McGraw-Hill's liability on any of the claims identified in Exhibit 1 to the Kerr Declaration, Pelaez's motion for summary judgment is GRANTED as to these claims. As explained *supra* in Section III.D, however, Pelaez cannot recover actual or statutory damages on many of these claims.

## D. Willfulness

Pelaez also requests summary judgment on the issue of whether McGraw-Hill's infringement of its copyright was willful.

### 1. Legal Standard

Where a plaintiff proves infringement, he or she "may, in lieu of an award of actual damages and profits, request that statutory damages under 17 U.S.C. § 504(c) be awarded." *Island Software & Comp. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 262–63 (2d Cir. 2005). "If a plaintiff so elects, the district court will grant anywhere between $750 and $30,000 for each copyright infringed." *Id.* (citing 17 U.S.C. § 504(c)(1)). If the defendant's infringement was willful, then "the district court may also, at its discretion, enhance the statutory damages award to as much as $150,000 per infringed work." *Id.* at 263 (citing 17 U.S.C. § 504(c)(2)).

"To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Island Software*, 413 F.3d at 263. Willfulness may be proven on summary judgment, so long as the court draws all reasonable inferences in the defendant's favor. *See, e.g., Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 F. App'x 26, 31 (2d Cir. 2013); *see also Island Software*, 413 F.3d at 263–64.

## 2. Application

Pelaez proceeds on a willful blindness theory. He contends that he is entitled to summary judgment on the willfulness issue because McGraw-Hill (1) knew that the photographs were copyrighted, and that licenses were required in order to lawfully exploit copyrighted material; (2) did not track its use of Pelaez's Photographs; (3) did not notify Corbis of its total use; and (4) has been defending against infringement suits involving the publications at issue in this case since as early as 2012.

McGraw-Hill does not dispute Pelaez's factual assertions. Instead, McGraw-Hill contends, first, that to prove willfulness Pelaez must demonstrate that a "specific . . . decision-maker" willfully "caused the infringement to occur." (McGraw-Hill Opp'n 25.) To the extent McGraw-Hill suggests that Pelaez cannot rely on the collective knowledge and actions of employees at McGraw-Hill to prove willfulness, the Court disagrees. The general rule in this Circuit, developed in the securities fraud context, is that "[a] corporation is considered to have acquired the collective knowledge of its employees." *New York v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 670 (S.D.N.Y. 2017) (Forrest, J.); *see also, e.g.*, *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 439 n.8 (S.D.N.Y. 2017) (Oetken, J.); *In re WorldCom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 497 (S.D.N.Y. 2005) (Cote, J.). Apart from citing, without discussion, a single out-of-Circuit district court decision, McGraw-Hill does not provide any reason for the court to depart from this general rule.

McGraw-Hill also contends, however, that its employees held the "reasonable belief" that, to the extent it reproduced photographs in quantities beyond those stated in Corbis's invoices, this "was simply a matter for additional billing and not copyright infringement." (McGraw-Hill Opp'n 24 (citing Beall Opp. Decl. ¶ 8).) In support of this contention, McGraw-Hill points to the course of dealing between itself and Corbis. Drawing all reasonable inferences

38

in favor of McGraw-Hill, a jury could conclude that McGraw-Hill did not believe it was engaging in copyright infringement when it used Pelaez's photographs in quantities beyond those provided for by the Corbis Invoices. For this reason, Pelaez's motion for summary judgment on willfulness is DENIED.

## V. Pelaez's Concession as to 61 Claims

Pelaez concedes that it has not alleged damages for sixty-one of its claims and does not oppose entry of judgment as to those claims. (Pelaez Opp'n 9.) Accordingly, summary judgment is GRANTED in favor of McGraw-Hill on those claims.[15]

## CONCLUSION

McGraw-Hill's motion for summary judgment is DENIED insofar as it contends that (1) it is entitled to summary judgment on all of Pelaez's claims because Pelaez cannot show that it violated a condition of its licenses; and (2) that the Corbis Registrations are invalid.

McGraw-Hill's motion for summary judgment is GRANTED insofar as it contends that (1) Pelaez may not seek statutory damages for the claims listed in paragraph 20 of Pelaez's 56.1 Response, with the exception of the claims listed in Rows 341 and 473 of Exhibit 1 to the TAC; and (2) Pelaez may not recover damages—actual or statutory—for the ninety-four claims in the TAC that are based on conduct which occurred entirely prior to July 6, 2013.

Pelaez's motion for summary judgment on the 129 claims listed in Exhibit 1 to the Kerr Declaration is GRANTED as to McGraw-Hill's liability on these claims; however, because of the Court's rulings regarding damages, Pelaez will not be able to recover statutory and/or actual damages on all of these claims.

---

[15] These claims are listed in TAC, Ex. 1, Rows 44, 45, 46, 82, 138, 182, 183, 201, 202, 204, 211, 224, 237, 238, 251, 254, 255, 256, 258, 262, 265, 267, 271, 297, 298, 299, 300, 328, 333, 353, 403, 404, 413, 420, 421, 424, 429, 430, 443, 446, 455, 466, 467, 475, 478, 482, 486, 487, 488, 489, 490, 493, 494, and 497; and TAC, Ex. 3, Rows 7, 15, 16, 20, 23, 34, and 45.

Pelaez's motion for summary judgment on the issue of willfulness is DENIED.

The Court has attached, as an appendix to this Opinion and Order, a chart summarizing its rulings as applied to each of Pelaez's claims.

By August 9, 2019, the parties are directed to submit to the Court a joint letter indicating (1) the steps, if any, that must be taken before this case is Ready for Trial; (2) whether they wish to be referred to mediation; and (3) whether they consent to trial of this case before a Magistrate Judge.

By August 23, 2019, the parties must submit to the Court a joint pretrial order. The joint pretrial order must comply with this Court's Individual Rules, which are available at http://nysd.uscourts.gov/judge/Wood. On that same date, this case will be deemed Ready for Trial.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 120 and 148.

SO ORDERED.

Dated: New York, New York
August 2, 2019

*Kimba M. Wood*

KIMBA M. WOOD
United States District Judge

40

| | Ineligible for Statutory Damages | Ineligible for Statutory and/or Actual Damages | Summary Judgment Granted in McGraw-Hill's Favor | Summary Judgment Granted in Pelaez's favor on Liability |
|---|---|---|---|---|
| Exhibit 1-Row 1 | X | X | | |
| Exhibit 1-Row 2 | X | X | | |
| Exhibit 1-Row 3 | X | X | | X |
| Exhibit 1-Row 4 | X | X | | |
| Exhibit 1-Row 5 | X | | | X |
| Exhibit 1-Row 6 | X | X | | |
| Exhibit 1-Row 7 | X | X | | |
| Exhibit 1-Row 8 | X | | | X |
| Exhibit 1-Row 9 | X | | | |
| Exhibit 1-Row 10 | X | | | X |
| Exhibit 1-Row 11 | X | | | |
| Exhibit 1-Row 12 | X | X | | |
| Exhibit 1-Row 13 | X | X | | |
| Exhibit 1-Row 14 | X | | | X |
| Exhibit 1-Row 15 | X | | | X |
| Exhibit 1-Row 16 | X | | | |
| Exhibit 1-Row 17 | X | | | |
| Exhibit 1-Row 18 | X | | | |
| Exhibit 1-Row 19 | X | | | |
| Exhibit 1-Row 20 | X | | | |
| Exhibit 1-Row 21 | X | | | |
| Exhibit 1-Row 22 | X | | | |
| Exhibit 1-Row 23 | X | | | |
| Exhibit 1-Row 24 | X | | | |
| Exhibit 1-Row 25 | X | | | |
| Exhibit 1-Row 26 | X | | | |
| Exhibit 1-Row 27 | X | | | |
| Exhibit 1-Row 28 | X | | | X |
| Exhibit 1-Row 29 | X | | | |
| Exhibit 1-Row 30 | X | | | X |
| Exhibit 1-Row 31 | X | | | X |
| Exhibit 1-Row 32 | X | | | |
| Exhibit 1-Row 33 | X | | | |
| Exhibit 1-Row 34 | X | | | |
| Exhibit 1-Row 35 | X | | | |
| Exhibit 1-Row 36 | X | | | |
| Exhibit 1-Row 37 | X | | | |
| Exhibit 1-Row 38 | X | | | |
| Exhibit 1-Row 39 | X | | | |
| Exhibit 1-Row 40 | X | | | |
| Exhibit 1-Row 41 | X | X | | |
| Exhibit 1-Row 42 | X | X | | |
| Exhibit 1-Row 43 | X | | | |
| Exhibit 1-Row 44 | X | | X | |

| | Ineligible for Statutory Damages | Ineligible for Statutory and/or Actual Damages | Summary Judgment Granted in McGraw-Hill's Favor | Summary Judgment Granted in Pelaez's favor on Liability |
|---|---|---|---|---|
| Exhibit 1-Row 45 | X | | X | |
| Exhibit 1-Row 46 | X | | X | |
| Exhibit 1-Row 47 | X | | | |
| Exhibit 1-Row 48 | X | X | | |
| Exhibit 1-Row 49 | X | | | |
| Exhibit 1-Row 50 | X | X | | |
| Exhibit 1-Row 51 | X | | | |
| Exhibit 1-Row 52 | X | | | |
| Exhibit 1-Row 53 | X | | | |
| Exhibit 1-Row 54 | X | | | |
| Exhibit 1-Row 55 | X | | | |
| Exhibit 1-Row 56 | X | | | |
| Exhibit 1-Row 57 | X | | | |
| Exhibit 1-Row 58 | X | | | |
| Exhibit 1-Row 59 | X | | | |
| Exhibit 1-Row 60 | X | | | |
| Exhibit 1-Row 61 | X | | | |
| Exhibit 1-Row 62 | X | | | |
| Exhibit 1-Row 63 | | | | |
| Exhibit 1-Row 64 | X | | | X |
| Exhibit 1-Row 65 | | | | X |
| Exhibit 1-Row 66 | X | | | X |
| Exhibit 1-Row 67 | X | | | X |
| Exhibit 1-Row 68 | X | | | X |
| Exhibit 1-Row 69 | X | | | X |
| Exhibit 1-Row 70 | X | | | X |
| Exhibit 1-Row 71 | X | | | X |
| Exhibit 1-Row 72 | X | | | X |
| Exhibit 1-Row 73 | X | | | X |
| Exhibit 1-Row 74 | | | | X |
| Exhibit 1-Row 75 | X | | | X |
| Exhibit 1-Row 76 | X | | | X |
| Exhibit 1-Row 77 | | | | X |
| Exhibit 1-Row 78 | X | | | X |
| Exhibit 1-Row 79 | X | | | X |
| Exhibit 1-Row 80 | X | | | X |
| Exhibit 1-Row 81 | X | | | X |
| Exhibit 1-Row 82 | X | | X | |
| Exhibit 1-Row 83 | X | X | | |
| Exhibit 1-Row 84 | X | X | | X |
| Exhibit 1-Row 85 | X | X | | X |
| Exhibit 1-Row 86 | X | X | | X |
| Exhibit 1-Row 87 | X | X | | X |
| Exhibit 1-Row 88 | X | X | | X |

| | Ineligible for Statutory Damages | Ineligible for Statutory and/or Actual Damages | Summary Judgment Granted in McGraw-Hill's Favor | Summary Judgment Granted in Pelaez's favor on Liability |
|---|---|---|---|---|
| Exhibit 1-Row 89 | X | X | | X |
| Exhibit 1-Row 90 | X | | | |
| Exhibit 1-Row 91 | X | X | | X |
| Exhibit 1-Row 92 | X | | | |
| Exhibit 1-Row 93 | X | | | |
| Exhibit 1-Row 94 | | | | X |
| Exhibit 1-Row 95 | X | | | X |
| Exhibit 1-Row 96 | X | | | X |
| Exhibit 1-Row 97 | X | | | X |
| Exhibit 1-Row 98 | X | | | |
| Exhibit 1-Row 99 | X | | | |
| Exhibit 1-Row 100 | X | | | |
| Exhibit 1-Row 101 | X | X | | |
| Exhibit 1-Row 102 | X | | | X |
| Exhibit 1-Row 103 | X | | | X |
| Exhibit 1-Row 104 | X | | | X |
| Exhibit 1-Row 105 | | | | |
| Exhibit 1-Row 106 | X | | | X |
| Exhibit 1-Row 107 | X | | | X |
| Exhibit 1-Row 108 | X | | | X |
| Exhibit 1-Row 109 | X | | | X |
| Exhibit 1-Row 110 | X | | | X |
| Exhibit 1-Row 111 | X | | | X |
| Exhibit 1-Row 112 | X | | | X |
| Exhibit 1-Row 113 | X | | | X |
| Exhibit 1-Row 114 | X | | | X |
| Exhibit 1-Row 115 | X | | | X |
| Exhibit 1-Row 116 | X | | | X |
| Exhibit 1-Row 117 | X | | | |
| Exhibit 1-Row 118 | X | | | X |
| Exhibit 1-Row 119 | X | | | X |
| Exhibit 1-Row 120 | X | | | X |
| Exhibit 1-Row 121 | X | | | X |
| Exhibit 1-Row 122 | X | | | |
| Exhibit 1-Row 123 | X | X | | |
| Exhibit 1-Row 124 | X | X | | |
| Exhibit 1-Row 125 | X | X | | X |
| Exhibit 1-Row 126 | X | X | | |
| Exhibit 1-Row 127 | X | X | | |
| Exhibit 1-Row 128 | X | | | |
| Exhibit 1-Row 129 | | | | |
| Exhibit 1-Row 130 | X | | | |
| Exhibit 1-Row 131 | X | | | X |
| Exhibit 1-Row 132 | X | | | X |

| | Ineligible for Statutory Damages | Ineligible for Statutory and/or Actual Damages | Summary Judgment Granted in McGraw-Hill's Favor | Summary Judgment Granted in Pelaez's favor on Liability |
|---|---|---|---|---|
| Exhibit 1-Row 133 | X | | | X |
| Exhibit 1-Row 134 | X | | | |
| Exhibit 1-Row 135 | X | | | |
| Exhibit 1-Row 136 | X | | | |
| Exhibit 1-Row 137 | X | | | |
| Exhibit 1-Row 138 | X | X | X | |
| Exhibit 1-Row 139 | X | | | X |
| Exhibit 1-Row 140 | X | | | X |
| Exhibit 1-Row 141 | | | | X |
| Exhibit 1-Row 142 | X | X | | |
| Exhibit 1-Row 143 | X | X | | |
| Exhibit 1-Row 144 | | X | | |
| Exhibit 1-Row 145 | X | X | | |
| Exhibit 1-Row 146 | | X | | X |
| Exhibit 1-Row 147 | X | | | |
| Exhibit 1-Row 148 | X | | | |
| Exhibit 1-Row 149 | X | | | X |
| Exhibit 1-Row 150 | X | | | X |
| Exhibit 1-Row 151 | X | X | | |
| Exhibit 1-Row 152 | | X | | |
| Exhibit 1-Row 153 | X | X | | |
| Exhibit 1-Row 154 | X | X | | |
| Exhibit 1-Row 155 | X | | | |
| Exhibit 1-Row 156 | X | | | |
| Exhibit 1-Row 157 | | X | | |
| Exhibit 1-Row 158 | X | | | |
| Exhibit 1-Row 159 | X | | | |
| Exhibit 1-Row 160 | X | X | | |
| Exhibit 1-Row 161 | | X | | |
| Exhibit 1-Row 162 | X | X | | |
| Exhibit 1-Row 163 | X | X | | |
| Exhibit 1-Row 164 | X | X | | |
| Exhibit 1-Row 165 | X | | | |
| Exhibit 1-Row 166 | X | X | | X |
| Exhibit 1-Row 167 | X | X | | |
| Exhibit 1-Row 168 | | X | | |
| Exhibit 1-Row 169 | | X | | |
| Exhibit 1-Row 170 | | X | | |
| Exhibit 1-Row 171 | X | X | | |
| Exhibit 1-Row 172 | X | X | | |
| Exhibit 1-Row 173 | X | X | | |
| Exhibit 1-Row 174 | X | | | |
| Exhibit 1-Row 175 | | | | |
| Exhibit 1-Row 176 | X | | | X |

| | Ineligible for Statutory Damages | Ineligible for Statutory and/or Actual Damages | Summary Judgment Granted in McGraw-Hill's Favor | Summary Judgment Granted in Pelaez's favor on Liability |
|---|---|---|---|---|
| Exhibit 1-Row 177 | X | | | X |
| Exhibit 1-Row 178 | X | | | |
| Exhibit 1-Row 179 | X | X | | |
| Exhibit 1-Row 180 | X | | | |
| Exhibit 1-Row 181 | X | | | |
| Exhibit 1-Row 182 | X | X | X | |
| Exhibit 1-Row 183 | | X | X | |
| Exhibit 1-Row 184 | X | X | | |
| Exhibit 1-Row 185 | X | X | | |
| Exhibit 1-Row 186 | X | X | | |
| Exhibit 1-Row 187 | X | X | | |
| Exhibit 1-Row 188 | | | | X |
| Exhibit 1-Row 189 | X | | | X |
| Exhibit 1-Row 190 | X | | | |
| Exhibit 1-Row 191 | X | | | |
| Exhibit 1-Row 192 | | | | X |
| Exhibit 1-Row 193 | X | | | X |
| Exhibit 1-Row 194 | X | | | X |
| Exhibit 1-Row 195 | X | | | X |
| Exhibit 1-Row 196 | X | | | X |
| Exhibit 1-Row 197 | X | | | X |
| Exhibit 1-Row 198 | X | | | |
| Exhibit 1-Row 199 | X | | | |
| Exhibit 1-Row 200 | X | X | | |
| Exhibit 1-Row 201 | X | | X | |
| Exhibit 1-Row 202 | X | | X | |
| Exhibit 1-Row 203 | X | | | X |
| Exhibit 1-Row 204 | X | | X | |
| Exhibit 1-Row 205 | X | | | |
| Exhibit 1-Row 206 | X | | | |
| Exhibit 1-Row 207 | X | | | |
| Exhibit 1-Row 208 | X | | | |
| Exhibit 1-Row 209 | X | | | |
| Exhibit 1-Row 210 | X | X | | |
| Exhibit 1-Row 211 | X | | X | |
| Exhibit 1-Row 212 | X | | | |
| Exhibit 1-Row 213 | X | | | |
| Exhibit 1-Row 214 | X | | | |
| Exhibit 1-Row 215 | X | | | |
| Exhibit 1-Row 216 | X | | | |
| Exhibit 1-Row 217 | X | X | | |
| Exhibit 1-Row 218 | X | X | | |
| Exhibit 1-Row 219 | X | X | | |
| Exhibit 1-Row 220 | X | X | | |

| | Ineligible for Statutory Damages | Ineligible for Statutory and/or Actual Damages | Summary Judgment Granted in McGraw-Hill's Favor | Summary Judgment Granted in Pelaez's favor on Liability |
|---|---|---|---|---|
| Exhibit 1-Row 221 | | X | | |
| Exhibit 1-Row 222 | X | X | | |
| Exhibit 1-Row 223 | X | X | | |
| Exhibit 1-Row 224 | X | | X | |
| Exhibit 1-Row 225 | X | | | |
| Exhibit 1-Row 226 | | | | |
| Exhibit 1-Row 227 | X | | | |
| Exhibit 1-Row 228 | X | | | |
| Exhibit 1-Row 229 | X | | | |
| Exhibit 1-Row 230 | X | | | |
| Exhibit 1-Row 231 | X | | | |
| Exhibit 1-Row 232 | X | | | |
| Exhibit 1-Row 233 | X | X | | |
| Exhibit 1-Row 234 | X | X | | |
| Exhibit 1-Row 235 | X | X | | |
| Exhibit 1-Row 236 | X | X | | |
| Exhibit 1-Row 237 | | | X | |
| Exhibit 1-Row 238 | X | | X | |
| Exhibit 1-Row 239 | | | | |
| Exhibit 1-Row 240 | X | | | |
| Exhibit 1-Row 241 | X | | | |
| Exhibit 1-Row 242 | X | X | | X |
| Exhibit 1-Row 243 | X | | | |
| Exhibit 1-Row 244 | X | | | X |
| Exhibit 1-Row 245 | X | | | |
| Exhibit 1-Row 246 | X | | | |
| Exhibit 1-Row 247 | X | | | |
| Exhibit 1-Row 248 | X | | | |
| Exhibit 1-Row 249 | | | | |
| Exhibit 1-Row 250 | X | | | |
| Exhibit 1-Row 251 | X | | X | |
| Exhibit 1-Row 252 | X | X | | |
| Exhibit 1-Row 253 | X | X | | |
| Exhibit 1-Row 254 | X | | X | |
| Exhibit 1-Row 255 | | | X | |
| Exhibit 1-Row 256 | X | | X | |
| Exhibit 1-Row 257 | X | | | X |
| Exhibit 1-Row 258 | | | X | |
| Exhibit 1-Row 259 | X | | | |
| Exhibit 1-Row 260 | | | | |
| Exhibit 1-Row 261 | X | X | | |
| Exhibit 1-Row 262 | | | X | |
| Exhibit 1-Row 263 | X | | | |
| Exhibit 1-Row 264 | X | | | |

| | Ineligible for Statutory Damages | Ineligible for Statutory and/or Actual Damages | Summary Judgment Granted in McGraw-Hill's Favor | Summary Judgment Granted in Pelaez's favor on Liability |
|---|---|---|---|---|
| Exhibit 1-Row 265 | X | | X | |
| Exhibit 1-Row 266 | X | | | X |
| Exhibit 1-Row 267 | X | | X | |
| Exhibit 1-Row 268 | X | | | X |
| Exhibit 1-Row 269 | X | | | X |
| Exhibit 1-Row 270 | X | | | X |
| Exhibit 1-Row 271 | X | X | X | |
| Exhibit 1-Row 272 | X | | | X |
| Exhibit 1-Row 273 | X | | | |
| Exhibit 1-Row 274 | X | X | | |
| Exhibit 1-Row 275 | X | X | | |
| Exhibit 1-Row 276 | X | | | |
| Exhibit 1-Row 277 | X | | | |
| Exhibit 1-Row 278 | X | | | |
| Exhibit 1-Row 279 | | | | |
| Exhibit 1-Row 280 | X | | | |
| Exhibit 1-Row 281 | X | | | |
| Exhibit 1-Row 282 | X | | | |
| Exhibit 1-Row 283 | X | | | |
| Exhibit 1-Row 284 | X | | | |
| Exhibit 1-Row 285 | X | | | X |
| Exhibit 1-Row 286 | | | | X |
| Exhibit 1-Row 287 | X | | | |
| Exhibit 1-Row 288 | X | | | |
| Exhibit 1-Row 289 | X | | | |
| Exhibit 1-Row 290 | X | | | |
| Exhibit 1-Row 291 | X | X | | |
| Exhibit 1-Row 292 | X | X | | |
| Exhibit 1-Row 293 | X | | | X |
| Exhibit 1-Row 294 | X | | | |
| Exhibit 1-Row 295 | X | | | |
| Exhibit 1-Row 296 | X | | | |
| Exhibit 1-Row 297 | X | | X | |
| Exhibit 1-Row 298 | X | | | |
| Exhibit 1-Row 299 | | | X | |
| Exhibit 1-Row 300 | | | X | |
| Exhibit 1-Row 301 | | | | |
| Exhibit 1-Row 302 | X | | | X |
| Exhibit 1-Row 303 | X | | | X |
| Exhibit 1-Row 304 | X | X | | |
| Exhibit 1-Row 305 | X | | | |
| Exhibit 1-Row 306 | | | | |
| Exhibit 1-Row 307 | X | | | |
| Exhibit 1-Row 308 | X | X | | |

| | Ineligible for Statutory Damages | Ineligible for Statutory and/or Actual Damages | Summary Judgment Granted in McGraw-Hill's Favor | Summary Judgment Granted in Pelaez's favor on Liability |
|---|---|---|---|---|
| Exhibit 1-Row 309 | X | | | |
| Exhibit 1-Row 310 | X | | | |
| Exhibit 1-Row 311 | | | | |
| Exhibit 1-Row 312 | X | | | |
| Exhibit 1-Row 313 | X | | | |
| Exhibit 1-Row 314 | X | | | |
| Exhibit 1-Row 315 | X | X | | X |
| Exhibit 1-Row 316 | X | | | X |
| Exhibit 1-Row 317 | X | | | |
| Exhibit 1-Row 318 | X | | | X |
| Exhibit 1-Row 319 | | | | |
| Exhibit 1-Row 320 | X | | | |
| Exhibit 1-Row 321 | X | | | X |
| Exhibit 1-Row 322 | X | | | |
| Exhibit 1-Row 323 | X | | | |
| Exhibit 1-Row 324 | X | | | X |
| Exhibit 1-Row 325 | X | | | X |
| Exhibit 1-Row 326 | X | | | |
| Exhibit 1-Row 327 | X | | | |
| Exhibit 1-Row 328 | X | | X | |
| Exhibit 1-Row 329 | X | | | |
| Exhibit 1-Row 330 | X | | | |
| Exhibit 1-Row 331 | X | | | |
| Exhibit 1-Row 332 | X | | | |
| Exhibit 1-Row 333 | | | X | |
| Exhibit 1-Row 334 | | | | |
| Exhibit 1-Row 335 | X | | | |
| Exhibit 1-Row 336 | X | | | |
| Exhibit 1-Row 337 | X | | | |
| Exhibit 1-Row 338 | | | | |
| Exhibit 1-Row 339 | | | | |
| Exhibit 1-Row 340 | | | | |
| Exhibit 1-Row 341 | | | | |
| Exhibit 1-Row 342 | X | | | |
| Exhibit 1-Row 343 | X | | | |
| Exhibit 1-Row 344 | X | | | |
| Exhibit 1-Row 345 | X | | | |
| Exhibit 1-Row 346 | X | | | X |
| Exhibit 1-Row 347 | X | | | |
| Exhibit 1-Row 348 | X | | | |
| Exhibit 1-Row 349 | X | | | |
| Exhibit 1-Row 350 | X | | | |
| Exhibit 1-Row 351 | X | | | |
| Exhibit 1-Row 352 | X | | | |

| | Ineligible for Statutory Damages | Ineligible for Statutory and/or Actual Damages | Summary Judgment Granted in McGraw-Hill's Favor | Summary Judgment Granted in Pelaez's favor on Liability |
|---|---|---|---|---|
| Exhibit 1-Row 353 | | | X | |
| Exhibit 1-Row 354 | X | | · | |
| Exhibit 1-Row 355 | X | | | |
| Exhibit 1-Row 356 | X | | | |
| Exhibit 1-Row 357 | X | | | |
| Exhibit 1-Row 358 | X | | | |
| Exhibit 1-Row 359 | | | | |
| Exhibit 1-Row 360 | X | | | |
| Exhibit 1-Row 361 | | | | |
| Exhibit 1-Row 362 | X | | | |
| Exhibit 1-Row 363 | | | | |
| Exhibit 1-Row 364 | | | | |
| Exhibit 1-Row 365 | X | | | |
| Exhibit 1-Row 366 | X | | | X |
| Exhibit 1-Row 367 | X | | | |
| Exhibit 1-Row 368 | | | | |
| Exhibit 1-Row 369 | X | | | |
| Exhibit 1-Row 370 | X | | | |
| Exhibit 1-Row 371 | X | | | |
| Exhibit 1-Row 372 | X | | | |
| Exhibit 1-Row 373 | X | | | |
| Exhibit 1-Row 374 | X | | | |
| Exhibit 1-Row 375 | X | | | |
| Exhibit 1-Row 376 | X | | | X |
| Exhibit 1-Row 377 | X | | | X |
| Exhibit 1-Row 378 | X | | | X |
| Exhibit 1-Row 379 | X | | | X |
| Exhibit 1-Row 380 | X | | | X |
| Exhibit 1-Row 381 | | | | |
| Exhibit 1-Row 382 | X | | | |
| Exhibit 1-Row 383 | X | | | |
| Exhibit 1-Row 384 | X | | | |
| Exhibit 1-Row 385 | X | | | |
| Exhibit 1-Row 386 | X | | | X |
| Exhibit 1-Row 387 | | | | X |
| Exhibit 1-Row 388 | X | | | X |
| Exhibit 1-Row 389 | X | | | X |
| Exhibit 1-Row 390 | X | | | X |
| Exhibit 1-Row 391 | X | | | X |
| Exhibit 1-Row 392 | | | | |
| Exhibit 1-Row 393 | X | | | X |
| Exhibit 1-Row 394 | | | | |
| Exhibit 1-Row 395 | X | | | |
| Exhibit 1-Row 396 | | | | X |

| | Ineligible for Statutory Damages | Ineligible for Statutory and/or Actual Damages | Summary Judgment Granted in McGraw-Hill's Favor | Summary Judgment Granted in Pelaez's favor on Liability |
|---|---|---|---|---|
| Exhibit 1-Row 397 | X | | | X |
| Exhibit 1-Row 398 | X | | | X |
| Exhibit 1-Row 399 | X | | | X |
| Exhibit 1-Row 400 | X | | | X |
| Exhibit 1-Row 401 | X | | | X |
| Exhibit 1-Row 402 | X | | | X |
| Exhibit 1-Row 403 | | | X | |
| Exhibit 1-Row 404 | X | | X | |
| Exhibit 1-Row 405 | X | | | X |
| Exhibit 1-Row 406 | X | | | X |
| Exhibit 1-Row 407 | X | | | X |
| Exhibit 1-Row 408 | X | | | X |
| Exhibit 1-Row 409 | X | | | |
| Exhibit 1-Row 410 | | | | |
| Exhibit 1-Row 411 | X | | | |
| Exhibit 1-Row 412 | X | X | | |
| Exhibit 1-Row 413 | X | | X | |
| Exhibit 1-Row 414 | | | | |
| Exhibit 1-Row 415 | | | | |
| Exhibit 1-Row 416 | | | | |
| Exhibit 1-Row 417 | X | | | |
| Exhibit 1-Row 418 | | | | X |
| Exhibit 1-Row 419 | | | | |
| Exhibit 1-Row 420 | X | | X | |
| Exhibit 1-Row 421 | X | | X | |
| Exhibit 1-Row 422 | X | | | |
| Exhibit 1-Row 423 | X | | | |
| Exhibit 1-Row 424 | X | | X | |
| Exhibit 1-Row 425 | X | | | |
| Exhibit 1-Row 426 | X | | | |
| Exhibit 1-Row 427 | X | X | | |
| Exhibit 1-Row 428 | X | | | X |
| Exhibit 1-Row 429 | X | | X | |
| Exhibit 1-Row 430 | X | | X | |
| Exhibit 1-Row 431 | X | | | |
| Exhibit 1-Row 432 | | | | |
| Exhibit 1-Row 433 | X | | | X |
| Exhibit 1-Row 434 | X | | | |
| Exhibit 1-Row 435 | X | | | |
| Exhibit 1-Row 436 | X | | | |
| Exhibit 1-Row 437 | X | | | |
| Exhibit 1-Row 438 | X | | | |
| Exhibit 1-Row 439 | X | | | |
| Exhibit 1-Row 440 | X | | | |

| | Ineligible for Statutory Damages | Ineligible for Statutory and/or Actual Damages | Summary Judgment Granted in McGraw-Hill's Favor | Summary Judgment Granted in Pelaez's favor on Liability |
|---|---|---|---|---|
| Exhibit 1-Row 441 | X | | | |
| Exhibit 1-Row 442 | X | | | |
| Exhibit 1-Row 443 | X | | X | |
| Exhibit 1-Row 444 | X | | | |
| Exhibit 1-Row 445 | X | | | |
| Exhibit 1-Row 446 | X | | X | |
| Exhibit 1-Row 447 | X | | | |
| Exhibit 1-Row 448 | X | | | |
| Exhibit 1-Row 449 | X | | | |
| Exhibit 1-Row 450 | | | | |
| Exhibit 1-Row 451 | X | | | |
| Exhibit 1-Row 452 | X | | | |
| Exhibit 1-Row 453 | X | | | X |
| Exhibit 1-Row 454 | X | | | |
| Exhibit 1-Row 455 | X | X | X | |
| Exhibit 1-Row 456 | X | X | | |
| Exhibit 1-Row 457 | X | | | X |
| Exhibit 1-Row 458 | X | X | | |
| Exhibit 1-Row 459 | X | X | | |
| Exhibit 1-Row 460 | X | | | |
| Exhibit 1-Row 461 | X | X | | |
| Exhibit 1-Row 462 | | X | | |
| Exhibit 1-Row 463 | X | X | | |
| Exhibit 1-Row 464 | X | | | |
| Exhibit 1-Row 465 | X | | | |
| Exhibit 1-Row 466 | X | | X | |
| Exhibit 1-Row 467 | X | | X | |
| Exhibit 1-Row 468 | X | | | |
| Exhibit 1-Row 469 | X | | | |
| Exhibit 1-Row 470 | X | | | |
| Exhibit 1-Row 471 | X | X | | |
| Exhibit 1-Row 472 | X | X | | |
| Exhibit 1-Row 473 | | | | |
| Exhibit 1-Row 474 | | | | X |
| Exhibit 1-Row 475 | X | | X | |
| Exhibit 1-Row 476 | X | | | |
| Exhibit 1-Row 477 | X | | | X |
| Exhibit 1-Row 478 | X | | X | |
| Exhibit 1-Row 479 | X | | | |
| Exhibit 1-Row 480 | X | | | |
| Exhibit 1-Row 481 | X | | | |
| Exhibit 1-Row 482 | X | X | X | |
| Exhibit 1-Row 483 | X | | | |
| Exhibit 1-Row 484 | X | | | |

11

| | Ineligible for Statutory Damages | Ineligible for Statutory and/or Actual Damages | Summary Judgment Granted in McGraw-Hill's Favor | Summary Judgment Granted in Pelaez's favor on Liability |
|---|---|---|---|---|
| Exhibit 1-Row 485 | | | | |
| Exhibit 1-Row 486 | X | | X | |
| Exhibit 1-Row 487 | X | | X | |
| Exhibit 1-Row 488 | X | | X | |
| Exhibit 1-Row 489 | | | X | |
| Exhibit 1-Row 490 | | | X | |
| Exhibit 1-Row 491 | X | | | |
| Exhibit 1-Row 492 | X | | | |
| Exhibit 1-Row 493 | | | X | |
| Exhibit 1-Row 494 | X | | X | |
| Exhibit 1-Row 495 | X | | | |
| Exhibit 1-Row 496 | X | | | |
| Exhibit 1-Row 497 | | | X | |
| Exhibit 2-Row 1 | | | | |
| Exhibit 2-Row 2 | | | | |
| Exhibit 2-Row 3 | | | | |
| Exhibit 2-Row 4 | | | | |
| Exhibit 2-Row 5 | X | | | |
| Exhibit 2-Row 6 | | | | |
| Exhibit 2-Row 7 | | | | |
| Exhibit 2-Row 8 | | | | |
| Exhibit 2-Row 9 | | | | |
| Exhibit 2-Row 10 | | | | |
| Exhibit 2-Row 11 | X | | | |
| Exhibit 2-Row 12 | X | | | |
| Exhibit 2-Row 13 | X | | | |
| Exhibit 2-Row 14 | X | | | |
| Exhibit 2-Row 15 | X | | | |
| Exhibit 2-Row 16 | X | | | |
| Exhibit 2-Row 17 | | | | |
| Exhibit 2-Row 18 | X | | | |
| Exhibit 2-Row 19 | X | | | |
| Exhibit 3-Row 1 | X | | | |
| Exhibit 3-Row 2 | | | | |
| Exhibit 3-Row 3 | | | | |
| Exhibit 3-Row 4 | | | | |
| Exhibit 3-Row 5 | | | | |
| Exhibit 3-Row 6 | X | | | |
| Exhibit 3-Row 7 | X | | X | |
| Exhibit 3-Row 8 | X | | | |
| Exhibit 3-Row 9 | X | | | |
| Exhibit 3-Row 10 | X | | | |
| Exhibit 3-Row 11 | | | | |
| Exhibit 3-Row 12 | | | | |

| | Ineligible for Statutory Damages | Ineligible for Statutory and/or Actual Damages | Summary Judgment Granted in McGraw-Hill's Favor | Summary Judgment Granted in Pelaez's favor on Liability |
|---|---|---|---|---|
| Exhibit 3-Row 13 | | | | |
| Exhibit 3-Row 14 | | | | |
| Exhibit 3-Row 15 | X | | X | |
| Exhibit 3-Row 16 | X | | X | |
| Exhibit 3-Row 17 | X | | | |
| Exhibit 3-Row 18 | X | | | |
| Exhibit 3-Row 19 | X | | | |
| Exhibit 3-Row 20 | X | | X | |
| Exhibit 3-Row 21 | X | | | |
| Exhibit 3-Row 22 | X | | | |
| Exhibit 3-Row 23 | X | | X | |
| Exhibit 3-Row 24 | X | | | |
| Exhibit 3-Row 25 | X | | | |
| Exhibit 3-Row 26 | X | | | |
| Exhibit 3-Row 27 | X | | | |
| Exhibit 3-Row 28 | | | | |
| Exhibit 3-Row 29 | | | | |
| Exhibit 3-Row 30 | X | | | |
| Exhibit 3-Row 31 | | | | |
| Exhibit 3-Row 32 | X | | | |
| Exhibit 3-Row 33 | X | | | |
| Exhibit 3-Row 34 | X | | X | |
| Exhibit 3-Row 35 | X | | | |
| Exhibit 3-Row 36 | X | | | |
| Exhibit 3-Row 37 | X | | | |
| Exhibit 3-Row 38 | X | | | |
| Exhibit 3-Row 39 | X | | | |
| Exhibit 3-Row 40 | X | | | |
| Exhibit 3-Row 41 | X | | | |
| Exhibit 3-Row 42 | X | | | |
| Exhibit 3-Row 43 | X | | | |
| Exhibit 3-Row 44 | | | | |
| Exhibit 3-Row 45 | X | | X | |
| Exhibit 3-Row 46 | | | | |
| Exhibit 3-Row 47 | X | | | |
| Exhibit 3-Row 48 | X | | ✗ | |
| Exhibit 3-Row 49 | X | | | |
| Exhibit 3-Row 50 | X | | | |
| Exhibit 3-Row 51 | X | | | |
| Exhibit 3-Row 52 | | | | |
| Exhibit 3-Row 53 | X | | | |
| Exhibit 3-Row 54 | | | | |
| Exhibit 3-Row 55 | X | | | |
| Exhibit 3-Row 56 | | | | |

| | Ineligible for Statutory Damages | Ineligible for Statutory and/or Actual Damages | Summary Judgment Granted in McGraw-Hill's Favor | Summary Judgment Granted in Pelaez's favor on Liability |
|---|---|---|---|---|
| Exhibit 3-Row 57 | X | | | |